# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Christine Learing, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

The Anthem Companies, Inc.,

        Defendant.

Case No. 21-cv-2283 (KMM/JFD)

**ORDER**

This matter is before the Court on Plaintiff Christine Learing's Motion for Conditional Certification (Dkt. No. 25). The Court held a hearing on the motion on January 28, 2022. Caroline Bressman and Rachhana Srey, Esqs., appeared for Plaintiff, and Kevin Young and Lennon Haas appeared for Defendant The Anthem Companies. For the reasons set forth below, the Court grants the motion and directs the parties to meet and confer over the form of the notice and notice distribution plan.

## I.    Background

This case is a putative collective action brought pursuant to the Fair Labor Standards Act ("FLSA").[1] (Compl. ¶ 1, Dkt. No. 1.) Plaintiff seeks to represent a collective of medical management nurses and nurses with similar job titles whom, she alleges, Defendant misclassified as exempt from overtime pay and to whom Defendant failed to pay proper

---

[1] Plaintiff also brings a putative class action for state law claims under the Minnesota Payment of Wages Act and Minnesota Fair Labor Standards Act, but that part of the case is not relevant to the motion for conditional certification of the FLSA collective action.

overtime compensation for the past three years. (*Id.* ¶ 4.) Defendant is an insurance company. (*Id.* ¶ 14.) According to Plaintiff, Defendant uses several job titles (medical management nurse, utilization review nurse, utilization management nurse, and nurse reviewer) for the same job, but the primary duty is the same: to conduct utilization reviews, also known as medical necessity reviews, for insurance coverage purposes. (*Id.* ¶ 23.) This work consists "of reviewing medical authorization requests submitted by healthcare providers against pre-determined guidelines and criteria for insurance coverage and payment purposes." (*Id.* ¶ 24.) Plaintiff worked for Defendant as a medical management nurse, conducting medical necessity reviews, from September 2018 to July 2021. (*Id.* ¶ 20.)

In the motion at hand, Plaintiff asks the Court to order conditional certification of a collective, authorize notice to putative collective members, and order Defendant to provide a list of collective members with names, addresses, telephone numbers, emails, partial social security numbers, job titles, and dates of employment. (Pl.'s Mem. Supp. at 2–3, Dkt. No. 27.) Plaintiff proposes to define the FLSA collective as:

> All persons who worked as Medical Management Nurses, Utilization Management Nurses, or Utilization Review Nurses, or in similar job titles who were paid a salary and treated as exempt from overtime laws, and were primarily responsible for performing medical necessity review[]s for Defendant in Minnesota from three years prior to the filing of this Complaint through judgment.

(*Id.* at 8.)

In support of her motion, Plaintiff submitted declarations from seven individuals (Kathy Burke, Kimberly Friedrich, Lisa Davis Herron, Tammy Hoff, Roger Marturano,

Katherine Reichert, and Plaintiff) that described their job duties, salaries, and hours. (Bressman Decl. Ex. A, Dkt. No. 28-1.) The declarations aver the following similar facts:

- All seven individuals worked in person in Anthem's Eagan, Minnesota, office location before March 2020, and from home after March 2020.
- They performed utilization reviews, also known as medical necessity reviews, which consisted of reviewing medical authorization requests submitted by healthcare providers and applying guidelines and criteria set by Defendant for insurance coverage and payment.
- They used Defendant's case management system, guidelines, criteria, policies, and procedures in performing the utilization reviews.
- Defendant set productivity quotas for the medical necessity reviews and audited their compliance with guidelines.
- The individuals determined whether an authorization request met the criteria provided by Defendant. If it did, they could approve it, but if it did not, they sent the request to a medical doctor for review.
- They worked more than 40 hours a week, were not required by Defendant to track their hours, and did not receive overtime pay.
- They were paid a salary and were treated by Defendant as exempt from the requirements of the FLSA and Minnesota law.
- They each named several other utilization review nurses and medical management nurses, including each other, who—based on their personal knowledge, observations, and experiences—they believe performed similar duties and did not receive overtime pay.
- They trained with other nurses in similar positions and personally experienced being trained on the same topics as other nurses.

(*Id.*) The seven individuals had the following job titles: utilization review nurse (Burke, Friedrich, and Marturano), medical management out-patient utilization management registered nurse (Herron), utilization management nurse (Hoff), medical management nurse I and II (Learing), and utilization review management nurse (Reichert). (*Id.*)

Defendant opposes the motion, supported by additional declarations. The Court will consider the declarations only to the extent the materials do not contradict Plaintiff's

evidence and would thus require the Court to make credibility determinations or resolve factual disputes. *See Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1083 (D. Minn. 2014) (Nelson, J.).

Kristie Head, R.N., works for Amerigroup, an Anthem subsidiary, as a manager of nurses in the Nurse Medical Management ("NMM") family of jobs, who perform utilization management reviews for Blue Cross Blue Shield of Minnesota. (Def.'s Ex. A ¶ 3, Dkt. No. 38-2.) Her current position is Manager I of Amerigroup's Minnesota Medicaid team. (*Id.* ¶ 4.) Ms. Head averred that the differences among NMM duties are comparable to the differences among duties of nurses who work in clinical settings. (*Id.* ¶ 7.) The various types of utilization reviews may differ, for example, as to the medical procedure under review, clinical information, guidelines, and interaction with providers. (*Id.*) The reviews may be for inpatient or outpatient treatment, and NMMs are not cross-trained on the two types of treatments. (*Id.* ¶ 9.) Some NMMs have more administrative, supervision, or training duties than others. (*Id.* ¶¶ 13–15.) Some NMMs specialize in certain procedures (such as neo-natal) or types of benefits based on their prior experience. (*Id.* ¶ 17.)

Cynthia Stokes, R.N., also works for Amerigroup as a manager of a team of NMM nurses who perform utilization management reviews for inpatient treatment for patients in Neonatal Intensive Care Units. (Def.'s Ex. B (Stokes Decl.) ¶ 3, Dkt. No. 38-3.) Ms. Stokes also attested that NMMs use different guidelines for evaluating request for inpatient and outpatient treatment. (*Id.* ¶ 10.) They must have the clinical knowledge and judgment to understand the particular procedures and files they are reviewing. (*Id.* ¶ 13.)

Defendant also refers to statements made in two declarations filed in another case, *Canaday v. The Anthem Companies*, No. 1:19-CV-1084 (W.D. Tenn.). (Def.'s Mem. Opp'n at 2–3, Dkt. No. 38.) These declarations were not filed in this case, however, and the Court does not consider the excerpts quoted in Defendant's memorandum.

## II.    Legal Standards

Under 29 U.S.C. § 216(b), an employee may bring an action for unpaid overtime compensation "for and in behalf of himself or themselves and other employees similarly situated." Each employee must give consent in writing to become a party. *Id.* Given this requirement, "the initial plaintiffs to an FLSA action may seek to notify eligible employees of the action—a process the court may authorize and facilitate by granting conditional-certification." *Seward v. Midwest Commc'n Servs., Inc.*, No. 20-CV-0093 (JRT/KMM), 2020 WL 7626394, at *1 (D. Minn. Nov. 25, 2020) (Menendez, J.). The Court has the discretion to determine whether "a collective action is the appropriate means for prosecuting an action." *Smith v. Heartland Auto. Servs., Inc.*, 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005) (Kyle, J.). The key question is whether the employees are "similarly situated." *Id.* The FLSA does not define "similarly situated," but courts have required plaintiffs to show "that an employer's commonly applied decision, policy, or plan similarly affects the potential class members, and inflicts a common injury on plaintiffs and the putative class." *Hussein v. Cap. Bldg. Servs. Grp., Inc.*, 152 F. Supp. 3d 1182, 1191 (D. Minn. 2015) (Nelson, J.) (quoting *Keef v. M.A. Mortenson Co.*, No. 07-CV-3915 (JMR/FLN), 2008 WL 3166302, at *2 (D. Minn. Aug. 4, 2008) (Rosenbaum, J.)).

A.      The Two-Stage Inquiry

Courts in the District of Minnesota employ a two-stage inquiry to determine whether employees are similarly situated. *Chin*, 57 F. Supp. 3d at 1082 (citing *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (Davis, J.)). "First, the court determines whether the class should be conditionally certified for notification and discovery purposes." *Id.* "The plaintiffs need only establish at that time a colorable basis for their claim that the putative class members were the victims of a single decision, policy, or plan." *Id.* "Determination of class status at the notice stage is granted liberally because the court has minimal evidence for analyzing the class." *Id.*; *see Vallone v. CJS Sols. Grp., LLC*, 437 F. Supp. 3d 687, 689 (D. Minn. 2020) (Magnuson, J.) ("The plaintiffs' burden at the first stage is a light one."), *aff'd*, 9 F.4th 861, 2021 WL 3640222 (8th Cir. 2021). Courts typically rely on the pleadings and plaintiffs' affidavits and make no credibility determinations or factual findings. *E.g.*, *Chin*, 57 F. Supp. 3d at 1082. The Court may not "completely ignore[]" contrary evidence, however. *Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 942 (D. Minn. 2009) (Schiltz, J.).

In addition to identifying similarly situated collective members, Plaintiff must demonstrate interest in the lawsuit from putative members. *Chin*, 57 F. Supp. 3d at 1090. The burden "is not particularly onerous" and may be satisfied by a small number of opt-in plaintiffs. *See id.* (finding four opt-in plaintiffs sufficient). Defendant does not argue that Plaintiff has not demonstrated sufficient interest in the lawsuit.

The second step of the two-stage inquiry, a defense motion to decertify a conditionally-certified collective, occurs after discovery ends. *Id.* at 1182. Since the parties

6

have not completed discovery in this case, the inquiry is at the first step. *See Murphy v. Lab. Source, LLC*, No. 19-CV-1929 (ECW), 2022 WL 378142, at *12 (D. Minn. Feb. 8, 2022) (Wright, Mag. J.).

## B.    Defendant's Proposed Inquiry

Defendant urges the Court to depart from longstanding District of Minnesota caselaw and adopt a new inquiry set forth in a recent Fifth Circuit opinion, *Swales v. KLLM Transport Services., L.L.C.*, 985 F.3d 430 (5th Cir. 2021). *Swales* rejected the two-stage certification inquiry and advised district courts to "rigorously enforce" the similarity requirement at the beginning of a case. *Id.* at 443. According to *Swales*, a court must first "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Id.* at 441. "And then it should authorize preliminary discovery accordingly." *Id.* The Court should consider "all of the available evidence" in determining which putative plaintiffs are similarly situated and eligible to receive notice. *Id.* at 441–42. If the group is not similarly situated, the court can decide the case may not proceed as a collective or may authorize additional discovery. *Id.* at 443.

The Court declines to apply *Swales*, as have other courts in the Eighth Circuit. *E.g.*, *Murphy*, 2022 WL 378142, at *11 n.4; *Rodriguez v. Cutchall*, No. 4:20-CV-3106, 2021 WL 5911322, at *2 (D. Neb. Nov. 16, 2021), *R. & R. adopted*, 2021 WL 5907935 (D. Neb. Dec. 14, 2021); *McCoy v. Elkhart Prods. Corp.*, No. 5:20-CV-05176, 2021 WL 510626, at *2 (W.D. Ark. Feb. 11, 2021). In doing so, the Court rejects Defendant's argument that the two-part inquiry subverts § 216(b)'s directive that only similarly situated employees may

proceed as a collective. "[A]lthough the burden of proof is low at the first stage of the two-stage approach, it is not non-existent." *Murphy*, 2022 WL 378142, at *11 n.4. Moreover, the two-step process does not, as Defendant asserts, convert notice from a case-management tool to a case-solicitation tool. The Court can manage the form and dissemination of the notice to avoid that result, *id.* at *22, and the Court is well aware of its "responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation," *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991) (Alsop, J.). Providing notice early in the case may also "prevent the expiration of claims based on the running of the statute of limitations." *Chin*, 57 F. Supp. 3d at 1094. Finally, courts have "wide discretion to manage collective actions," *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010) (*citing Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 171 (1989)), and Congress did not specify a different procedure. The *Swales* approach impinges on the courts' discretion to implement § 216(b)). *Murphy*, 2022 WL 378142, at *11 n.4.

## III.   Discussion

### A.   Conditional Certification

Plaintiff contends that she and the putative collective members performed the same primary job duty of conducting medical necessity reviews. They reviewed authorization requests for medical benefits and services against guidelines and criteria set by Defendant to determine insurance coverage and payment. They were subject to Defendant's productivity quotas, audited for compliance with Defendant's guidelines, and had no independent authority to deny authorization requests. They were all paid a salary, were not

required to track hours, were treated as exempt from overtime pay, and worked more than 40 hours a week. They all worked in Defendant's Eagan office until March 2020.

Although the declarations submitted by Defendant provide additional details about the nature and parameters of the utilization and medical necessity reviews performed by some NMMs, those details do not foreclose a finding that Plaintiff is similarly situated to the proposed collective members. *See Canaday v. Anthem Cos., Inc.*, 439 F. Supp. 3d 1042, 1044 (W.D. Tenn. 2020) (finding the plaintiff similarly situated to the proposed collective even though the medical management nurses conducted different types of reviews (inpatient, outpatient, and subacute), and the reviews were conducted according to different guidelines), *aff'd on other grounds*, 9 F.4th 392 (6th Cir. 2021) (affirming only the jurisdictional question and not addressing conditional certification). In *Canaday*, the plaintiff, a medical management nurse, brought an identical FLSA against The Anthem Companies—the same Defendant here—for allegedly misclassifying her as exempt and not paying her overtime. *Id.* After considering materials similar to those filed in this case— including Defendant's filings—the court concluded that the plaintiff had "made a 'modest factual showing' that she [was] similarly situated to the putative" collective. *Canaday v. Anthem Cos., Inc.*, 441 F. Supp. 3d 644, 646, 652 (W.D. Tenn. 2020) (summarizing the evidence in a report and recommendation), *R. & R. adopted*, 439 F. Supp. 3d at 1049. The district court agreed and authorized the case to proceed conditionally as a collective action. *Canaday*, 439 F. Supp. 3d at 1050

Moreover, Defendants' declarations and other materials do not "pointedly reflect that a collective action would be improper." *Thompson v. Speedway SuperAmerica LLC*,

No. 08-CV-1107(PJS/RLE), 2009 WL 130069, at *10 (D. Minn. Jan. 20, 2009). The granular differences in job titles and duties do not surmount the overarching similarities described in Plaintiff's declarations. *See Burch*, 500 F. Supp. 2d at 1187 (finding that "many small differences in the job descriptions" did not overcome the "relevant similarities mak[ing] conditional certification appropriate"). After all, the standard is "similarly situated," not "identically situated." *See id.*

Defendant next submits that the seven individuals who provided declarations in support of Plaintiff's motion have different job titles than averred in their declarations. (Def.'s Mem. Opp'n at 3 n.1.) But Defendant cites no evidence to support this assertion. (*See id.*)

Defendant also argues that the supporting declarations do not demonstrate the declarants' personal knowledge about the job duties and experiences of other putative plaintiffs. Defendant contends the declarations should have identified where and when the declarants observed other nurses performing their duties. Defendant also observes that all of the declarants have worked from home since March 2020 and suggests, therefore, they could not have known what other employees were doing. (Def.'s Mem. Opp'n at 9–10.) The Court disagrees on all counts. The declarants all averred that their statements were based on their "personal knowledge, experiences, and observations." (*E.g.*, Bressman Ex. A (Burke Decl.) ¶ 1.) They each named other nurses who performed similar job duties and were not paid overtime. Defendant cites no authority for the proposition that the declarants had to include the specific dates and locations of their observations, and the Court finds unpersuasive this challenge to their credibility. Defendant fails to provide any evidence or

legal authority that working remotely precludes coworkers from knowing each other's job duties; indeed, that argument ignores the  way  many workplaces are functioning during the COVID-19 pandemic. Moreover, each declarant worked in the same Anthem office, in person, before March 2020, and thus worked in person at the same location for some of the time period in question.

Finally, Defendant argues that Plaintiff has not shown a common unlawful policy or plan. To the contrary, Plaintiff has shown that she and other putative collective members were subject to the same compensation scheme: They worked more than 40 hours a week, were paid a salary, were not required to report hours worked, were *wrongly* classified as exempt from overtime protections under federal and state law, and were *wrongly* not paid overtime compensation.

In sum, the Court finds that Plaintiff has established a colorable basis that she and the putative collective members are similarly situated and were the victims of the same alleged policy of misclassifying them as exempt from overtime pay. Other courts have reached the same conclusion in similar cases. *E.g.*, *Canaday*, 439 F. Supp. 3d at 1049; *Gardner v. Fallon Health & Life Ins. Co.*, No. 4:19-40148-TSH, 2021 WL 4459525, at *4 (D. Mass. Sept. 29, 2021) (conditionally certifying collective of utilization review nurses); *Wood v. AmeriHealth Caritas Servs., LLC*, No. 17-03697, 2018 WL 9517197, at *1 (E.D. Pa. May 15, 2018) (conditionally certifying a nationwide collective of utilization review nurses); *Rego v. Liberty Mut. Managed Care LLC*, No. 17-C-66, 2017 WL 11418354, at *2 (E.D. Wis. Aug. 23, 2017) (conditionally certifying a collective of utilization management nurses).

**B.    Notice**

"[C]ourts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). "The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity," and such benefits "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* at 170. "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed." *Id.* at 172.

The Court will exercise its discretion here, and in so doing, finds the *Canaday* decision instructive. That court required Defendant to provide within 21 days of the court's order each putative plaintiff's "(1) name, (2) job title, (3) last known address, (4) last known personal email address, (5) dates of employment, and (6) location(s) of employment in an electronic and importable format." 439 F. Supp. 3d at 1050. Defendant was not required, however, to provide social security numbers or employee identification numbers. The Court will order the same here.[2]

As to the form of the notice and notice distribution, the parties indicated at the motion hearing they were willing to meet and confer. The Court asks counsel for the parties

---

[2] Defendant has filed a motion to stay, which the Court will hear on March 2, 2022. No part of this Order is stayed pending the resolution of that motion.

to do so, and to file within 14 days a mutually acceptable notice (or separate proposed notices with support for any differences of position), as well as a mutually acceptable notice distribution plan (or separate proposed distribution plans with support for any differences of position).

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff Christine Learing's Motion for Conditional Certification (Dkt. No. 25) is **GRANTED**, and this matter is conditionally certified as a collective action, defined as:

   > All persons who worked as Medical Management Nurses, Utilization Management Nurses, or Utilization Review Nurses, or in similar job titles who were paid a salary and treated as exempt from overtime laws, and were primarily responsible for performing medical necessity reviews for Defendant in Minnesota from three years prior to the filing of this Complaint through judgment.

2. Within 21 days of this Order, Defendant shall provide to Plaintiff the name, job title, last known address, last known personal email address, dates of employment, and locations of employment for each putative collective member in an electronic and importable format.

3. Within 14 days of this Order, the parties shall meet and confer and file either a mutually acceptable notice and distribution plan, or separate proposed notices and distribution plans with support for any differences of position.

The parties should also email a Microsoft Word version of these documents to chambers.

Date:  February 28, 2022                    *s/  John F. Docherty*
                                            JOHN F. DOCHERTY
                                            United States Magistrate Judge