UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CHRISTINE LEARING, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>THE ANTHEM COMPANIES, INC., Amerigroup Corporation, and Amerigroup Partnership Plan, LLC,<br><br>　　　　　Defendants. | Case No. 0:21-CV-02283-JWB-DJF<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RULE 23 CLASS ACTION CERTIFICATION** |

## INTRODUCTION

It is well-established that "Rule 23 actions are fundamentally different from collective actions under the FLSA[.]" *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74–75 (2013) (explaining that, unlike Rule 23 certification, FLSA conditional certification "does not produce a class with an independent legal status, or join additional parties to the action" and individuals must file written consent to join an FLSA action). Yet, Defendants treat them as one and the same, arguing that Rule 23 certification is unnecessary because medical management nurses ("NMMs") employed by Defendants already had an opportunity to join this action through the FLSA opt-in process. Defendants' position disregards substantial caselaw permitting hybrid FLSA and Rule 23 actions like this one, practical realities that may dissuade someone from joining an FLSA action, and the imperfect overlap between the size and claims of the FLSA and Rule 23 classes in this

1

case. Rule 23 certification will not force unwilling NMMs into this action. To the contrary, it will provide an opportunity for NMMs who did not opt into the FLSA action for whatever reason (whether out of fear, burden, or because they did not previously receive the FLSA notice) to pursue their claims against Defendants. Plaintiff's proposed class notice clearly informs NMMs of the process for opting out should they wish to do so. (ECF No. 148-44.)

Defendants' hyperfocus on legally insignificant differences also does not defeat certification. In their summary judgment motion, Defendants ask this Court to decide the merits of their exemption defenses with respect to *all* NMMs based on undisputed material facts and common evidence. (ECF Nos. 139, 140.) They do not argue that some NMMs are exempt while others are not. Defendants' motion cannot be reconciled with their opposition here—their contention that liability cannot be determined on a class-wide basis rings hollow.[1]

Plaintiff has met her burden under Rule 23. Common questions predominate this case that will be resolved through common evidence. Plaintiff respectfully requests that the Court grant her motion and certify a class of NMMs who worked for Defendants in Minnesota between October 14, 2018, and the present.

---

[1] Defendants incorrectly assert that an examination of each NMM's duties is necessary because Plaintiff is advocating for an exception to the "general axiom" that registered nurses are exempt under 29 C.F.R. 541.301(e)(2). (ECF No. 168 at 2.) As discussed in Plaintiff's summary judgment briefing, utilization review work is distinct from registered nursing and must be considered under its own lens. (ECF No. 128 at 9–10, 25–28; ECF No. 160 at 5–12.) No individualized inquiry is necessary because NMMs' work was the same in all material ways. (*See* ECF No. 147 at 6–15; *infra* §§ II.B, II.C.)

**ARGUMENT**

**I.      Plaintiff Has Shown Commonality Under Rule 23(a).**

Plaintiff has shown the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (not all questions must be common but there must be a contention "capable of classwide resolution[.]"). There is a "low bar for showing commonality." *Drake v. Steak N Shake Operations, Inc.*, 286 F. Supp. 3d 1040, 1052 (E.D. Mo. 2017) (finding plaintiffs "clear[ed] the low bar" by showing each was classified by defendant's policy as an overtime-exempt employee because whether they qualified as exempt "is the fundamental legal question at issue in this suit"); *see Hartley v. Suburban Radiologic Consultants, Ltd.*, 295 F.R.D. 357, 376 (D. Minn. 2013) ("As a general rule, the commonality requirement imposes a very light burden on a plaintiff seeking to certify a class and is easily satisfied." (citation omitted)).

Like in *Drake* and Plaintiff's other cases (*see* ECF No. 147 at 23), the central question here—whether Defendants wrongfully classified NMMs as exempt from overtime pay—is enough to show commonality. There is no evidence Defendants' decision to classify NMMs as exempt was made on an individualized basis; to the contrary, Defendants *uniformly* classified NMMs performing utilization reviews as overtime exempt under federal and state laws. (Ex. 49, Smith Decl. ¶ 6 (stating NMM role is exempt).)[2] It therefore

---

[2] Smith notes a sole exception to this classification, a group of employees in the Post Service Clinical Claim Review ("PSCCR") Department. In summer 2022, Anthem reclassified NMMs in that department as exempt. (*See* Ex. 45, Bickford Dep. at 40:22-41:3, 76:17-24.) Putative class members did not work in the PSCCR department.

3

defies logic that the legality of that classification decision would need to be examined on an individualized basis. *See Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1029–30 (D. Minn. 2007) (rejecting defendant's "attempts to now disavow the sufficiency of this generalized evidence").

Beyond Defendants' uniform classification without consideration of differences, Plaintiff has also identified seven common questions, the answers to which are "apt to drive the resolution" of the misclassification claims in this case. (ECF No. 147 at 22); *see Dukes*, 564 U.S. at 350 (citation omitted). These include questions directly relevant to the elements of Defendants' exemption defenses on which Defendants have moved for summary judgment as to all NMMs.

## II. Plaintiff Has Met Rule 23(b)(3)'s Predominance and Superiority Requirements.

### A. Defendants' Arguments Regarding the FLSA Collective Do Not Defeat Superiority.

Ignoring that it is common to have both an FLSA collective and Rule 23 class within the same action, Defendants assert that certification of a Rule 23 class is "inferior" because putative class members already had an opportunity to join the FLSA collective and did not do so.[3] (ECF No. 168 at 1, 6–7.) This argument should be rejected. First, conditional certification of an FLSA collective does not preclude Rule 23 class certification. Indeed,

---

[3] Defendants state that "four notices" were sent to the conditionally certified FLSA collective. In reality, as the parties stipulated and the Court approved (ECF Nos. 51, 53), an initial notice and reminder notice were sent via both mail and email. Notice by traditional and electronic means and reminder notices are both standard practice in FLSA actions. (*See* ECF No. 27 at 16–17 (collecting cases).)

4

courts regularly certify FLSA collectives and Rule 23 classes within the same action. *See, e.g.*, *Deutsch v. My Pillow, Inc.*, No. 20-cv-00318 (SRN/ECW), 2023 WL 3125549, at *34 (D. Minn. Apr. 27, 2023) (rejecting defendant's argument that 117 potential class members must be excluded because they received notification of FLSA conditional certification and chose not to join); *Salazar v. Agriprocessors, Inc.*, 527 F. Supp. 2d 873, 885–86 (N.D. Iowa 2007) (finding exercise of supplemental jurisdiction over state law claims proper, noting "[t]he court is well-equipped to manage a case involving a FLSA collective action and a state-law class action" and "[o]ther district courts have proceeded well beyond the stage of exercising supplemental jurisdiction and have certified both FLSA collective actions and Rule 23 classes involving claims of violations of state wage payment collection laws");[4] *see also Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 973–74, 977–78 (7th Cir. 2011) (concluding "there is no categorical rule against certifying a Rule 23(b)(3) state-law class action in a proceeding that also includes a collective action brought under the FLSA," implicitly overruling the *Muecke* decision Anthem relies on here); *Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431 (C.D. Cal. 2014) (granting Rule 23 certification after granting FLSA conditional certification); *Guzman v. VLM, Inc.*, No. 07-CV-1126 JC RER, 2008 WL 597186, at *10 (E.D.N.Y. Mar. 2, 2008) ("[T]here is no reason that FLSA's collective

---

[4] Should the Court have any concern about putative class members who received FLSA notice receiving additional notice, the Court could order that the class notice "explain why the class members are receiving a second notice" and "highlight the difference between the opt-in procedure applicable to the federal claim and the opt-out procedure applicable to the state claim." *Nerland*, 564 F. Supp. 2d at 1014.

action procedure is incompatible with maintaining a state law class action over the same conduct.").[5]

Second, Defendants' arguments regarding the opt-in rate implicate numerosity more so than superiority and fall flat. It cannot be assumed that individuals who chose not to join this case upon receiving FLSA notice were aware of their potential state law claims and would not wish to pursue them now. Moreover, there are a myriad of reasons they may have decided not to opt in. *See Deutsch*, 2023 WL 3125549, at *34 ("Aside from retaliation, these individuals may have simply desired to avoid the burdens of affirmatively joining the FLSA collective action—for example, the exposure of embarrassing personal information through invasive deposition questioning."); *Cruz v. TMI Hosp., Inc.* No. 14-cv-1128 (SRN/FLN), 2015 WL 6671334, at *6 (D. Minn. Oct. 30, 2015) (certifying a Rule 23 class and denying defendant's FLSA decertification motion, stating "[t]he size of an opt-in

---

[5] For this and other reasons, Defendants' authority is distinguishable. In *Threet v. Dassault Falcon Jet Corp.*, the court considered a Rule 23 class certification motion where a *separate* case brought by employees in the same job position asserting the same claims against the same employer had already been conditionally certified. No. 4:18-CV-00445 BSM, 2019 WL 1422725, at *1 (E.D. Ark. Feb. 13, 2019). The court reasoned, in part, that the proposed class would overlap with the one certified in the other action, "which may lead to inconsistent fact finding and case management issues." *Id.* at 3. The court was careful to limit its holding to the facts of that case, stating that its ruling did not bar Rule 23 class certification "merely because a collective action was conditionally certified against the same employer." *Id.* at *3. Likewise, the court in *Rasberry v. Columbia Cnty., Ark.*, made clear that "the fact that only five individuals other than [the plaintiff] chose to opt-in" to the FLSA collective action was "in no way dispositive of the present issue of whether Rule 23 class certification is proper[.]" No. 1:16-CV-1074, 2017 WL 3259447, at *6 (W.D. Ark. July 31, 2017). The same is true here. Additionally, Plaintiff is not aware of any other unpaid overtime lawsuits brought by NMMs in Minnesota, either individually or as a class. To clarify, Plaintiff's counsel is, of course, aware of the related matters pending against Anthem in other states, none of which assert Minnesota state law claims.

FLSA class is not determinative of the size of an opt-out Rule 23 class"); *Cortez v. Nebraska Beef, Inc.*, 266 F.R.D. 275, 294 (D. Neb. 2010) (rejecting the *Muecke* decision Anthem relies on here and certifying a Rule 23 class, stating "there may be a number of reasons the employees failed to opt-in to the [FLSA] action that had nothing to do with a belief they were not actually aggrieved"). It is reasonable to consider a possible fear of retaliation, particularly for individuals still employed by Defendants. *See Deutsch*, 2023 WL 3125549, at *34 ("Even a mere 'possibility' that individuals did not join due to a fear of retaliation warrants their inclusion in the class."); *Cortez*, 266 F.R.D. at 294 (listing fear of retaliation as potential bar to opting in); *Nerland*, 564 F. Supp. 2d at 1031 ("[A] state class certification with its opt-out procedures could provide an avenue for additional store managers to assert their claims without the same level of apprehension that comes from taking affirmative steps to join into the lawsuit."); *see also Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 183 (S.D. Ohio 2012) ("In employment class actions like this one, a class member's potential fear of retaliation is an important consideration in deciding whether joinder is impracticable and thus whether the numerosity requirement is satisfied." (collecting cases)). At the time Defendants provided the FLSA notice list, Defendants actively employed 33 of the 65 NMMs on the list. (Srey Decl. ¶ 3.) While some NMMs' employment may have since terminated, the putative Rule 23 class may also exceed 65 to the extent Defendants hired new NMMs after March 21, 2022, the date Defendants pulled the FLSA list.

Third, a class is superior because certification of Plaintiff's MFLSA and the Minnesota Payment of Wages Act ("MPWA") claims provides relief beyond what the

FLSA provides. In particular, the MPWA provides for penalties when an employer fails to timely pay wages owed to an employee. *See* Minn. Stat. §§ 181.101, 181.13, 181.14.

### B. A Class Action Is Manageable.

Defendants' concerns about manageability are likewise uncompelling. It is unnecessary to "host numerous individual trials when the central question in all of them is the same," *i.e.*, whether the employee is exempt, "and when the material aspects of [p]laintiffs' employment experiences are largely identical." *Drake*, 286 F. Supp. 3d at 1053. As discussed below, in Plaintiff's opening memorandum, and Plaintiff's other briefing, NMMs performed the same primary job duty; were subject to the same state-specific contract; operated under the same or substantially similar policies, procedures, and work processes; were uniformly classified as administratively and professionally exempt; and suffered similar injuries from working over forty-eight hours per week without receiving overtime pay. (ECF No. 147 at 6–15; *see also* ECF No. 128 at 3–23; ECF No. 164 at 7–17.) These are the material aspects of NMMs' work. Defendants criticize Plaintiff's view of the NMM role as being at a "high level of generality." (ECF No. 168 at 8.) But Defendants' view is far too granular. As this Court has noted, "[i]f one zooms in close enough on anything, differences will abound . . . . Plaintiffs' claims need to be considered at a higher level of abstraction." *Frank v. Gold'n Plump Poultry, Inc.*, No. 04-cv-1018 (PJS/RLE), 2007 WL 2780504, at *4 (D. Minn. Sept. 24, 2007) (denying defendant's motion to decertify FLSA collective and deferring defendant's motion to deny

Rule 23 class certification but noting it was "likely that the Court will also find a Rule 23 class action is appropriate").

### C. Plaintiffs' Claims Are Supported by Common Evidence.

"The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence[.]" *Halvorson v. Auto–Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013) (citation omitted); *Nerland*, 564 F. Supp. 2d at 1034–35 ("Claims will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." (citation omitted)).

As discussed in detail in Plaintiff's opening brief, Plaintiff's claims and Defendants' affirmative defenses are subject to proof through common evidence, including Defendants' own documents and testimony from Defendants' 30(b)(6) representatives, putative class members' managers, and a representative set of NMMs. Plaintiff and the putative class all work in the same job position and assert the same overtime claims under the same legal theories. (ECF No. 147 at 4, 23–24.) Defendants assert the same learned professional and administrative exemption defenses against all NMMs. (*Id.* at 16–17.) NMMs shared the same primary duty, followed the same utilization review process regardless of the type of review, and were subject to uniform standards set by national accreditation entities, contractual obligations, and company policies. (*See id.* at 6–9.) Each aspect of their work was highly regimented with clearly defined processes NMMs were expected to follow and the limits on their authority were the same, such that the question of whether they exercised discretion and judgment within the meaning of the learned professional and administrative

9

exemptions can be answered uniformly. (*See* ECF No. 147 at 7–13; Ex. 46, Learing Dep. at 174:14-24, 175:6-14, 176:2-17.) Ultimately, class-wide proof will show that NMMs performed non-exempt work. (*See generally* ECF Nos. 128, 160.)

### III.  The Differences Identified by Defendants Do Not Defeat Class Certification.

Defendants' focus on minor variances among class members pervades their arguments as to both commonality under Rule 23(a) and predominance under Rule 23(b). Courts "consider dissimilarities not in order to determine (as Rule 23(b)(3) requires) whether common questions *predominate*, but in order to determine (as Rule 23(a)(2) requires) whether there *is* even a single common question." *Dukes*, 564 U.S. at 359; *see also, e.g.*, *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 797 (8th Cir. 2014), *aff'd and remanded*, 577 U.S. 442 (2016) (finding factual differences in protective equipment, employees' individual routines, and duties and management among departments did not defeat class certification where plaintiffs' claims could be commonly resolved). "Factual variances among class grievances will not defeat the commonality requirement, so long as the claims arise from a common nucleus of operative facts." *Nerland*, 564 F. Supp. 2d at 1031; *see also Drake*, 286 F. Supp. 3d at 1053 ("Given the [p]laintiffs' nearly uniform description of their day-to-day employment responsibilities, the common question of exemption predominates the selective differences highlighted by [defendant].").

None of the differences Defendants raise render class members' claims incapable of class-wide proof and resolution. As an initial matter, Defendants' assertion that NMMs performed materially different job duties is disingenuous and contradictory to the record because there is no dispute that the primary duty of the NMM I, II, and Senior roles was to

perform utilization reviews. (ECF No. 148-4, Defs.' Resp. to Pl.'s Req. for Admis. No. 9.) Defendants note that NMM Seniors spent time on other tasks in addition to performing utilization reviews (*see* ECF No. 168 at 12), but these other tasks were not their primary duty, as Defendants readily admit. (ECF No. 148-4, Defs.' Resp. to Pl.'s Req. for Admis. No. 9.)[6] Because the exemptions' focus is on an employee's primary duty, any other secondary duties that NMM Seniors may have performed are irrelevant to the exemption analysis and certification.

Defendants identify a number of other differences, namely that NMMs performed reviews for different types of requests using different guidelines, and that they performed reviews at different times or in different settings with different turnaround windows. However, they do not (because they cannot) explain how any of these differences matter to the exemption analysis. These differences are legally insignificant because they did not change NMMs' primary duty. The core function of their work—to process insurance authorization requests by comparing records submitted by providers against standardized applicable medical necessity criteria—remained the same regardless of the type of benefit or service requested.[7] All NMMs followed the same processes to perform a review

---

[6] The evidence also indicates that NMM Leads had the same primary duty. *See* 29 C.F.R. § 541.700(a) ("The term 'primary duty' means the principal, main, major or most important duty that the employee performs."). One Opt-in Plaintiff briefly worked as an NMM Lead and testified that she spent 50% of her time conducting reviews and 50% on other non-exempt tasks such as running reports and updating the team's calendar. (Ex. 47, Havir Dep. at 33:23-34:2, 57:25-58:2, 61:12-64:15.)

[7] Defendants assert that NMMs developed different "specializations." (ECF No. 168 at 2.) But again, whether some reviewers were assigned specific review types did not change an NMMs' primary duty. (*Compare* ECF No. 148-2, Boughton (who processed NICU

11

regardless of how long it took them to process an authorization request or the deadline for doing so, whether they worked in the office or from home, and the complexity of the request.[8]

Further, variances between NMMs' hours worked do not preclude certification because they go to damages. "[L]iability—not damages—is the focus of the commonality and predominance inquiries." *Cruz*, 2015 WL 6671334, at *9. "[E]ven if the damages. . . cannot ultimately be calculated on a classwide basis, class certification is still appropriate if the other certification factors are met and there is no risk that individual damages issues outweigh the classwide issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482, 489 (D. Minn. 2015); *see also Day v. Celadon Trucking Servs., Inc.*, 827 F. 3d 817, 833 (8th Cir. 2016) (stating class actions "may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, *such as damages*"); 2 Newberg and Rubenstein on Class Actions § 4.54 (6th ed. 2022) ("[T]he black letter rule is that individual damage calculations generally do not defeat a finding

---

reviews) Interrog. Resp. No. 1, *with* ECF No. 148-1, Learing (who processed outpatient and inpatient reviews) Interrog. Resp. No. 1; Ex. 48, Rush Dep. at 43:13-18, 162:4-6 (who performed both helicopter and outpatient reviews, stating her primary duty was to perform utilization reviews).)

[8] Defendants' contentions that Learing's primary duty was different than other NMMs prior to January 2019 and that she has no knowledge of other teams beyond her own are unfounded. (*See* ECF No. 168 at 10, 14.) First, Learing and other NMMs assigned to the Minnesota plan all spent several months training to learn how to do utilization reviews before "going live" on January 1, 2019. (*See* ECF No. 147 at 11.) This was not unique to Learing. Second, NMMs in Minnesota worked on one of two teams, the inpatient team or the outpatient team. Learing worked on *both* teams during the course of her employment. (Ex. 46, Learing Dep. at 113:7-15.) While there were minor variances between the two teams, NMMs on both teams had the same primary duty and were generally subject to the same or similar policies or processes. (*See* ECF No. 147 at 9–10.)

that common issues predominate[.]"). Here, there is no such risk. The common questions critical to ascertaining Defendants' liability under Minnesota law, *i.e.*, whether Defendants have met their burden to show NMMs' primary duty satisfies the requirements of the professional and administrative exemptions, outweigh individual damages issues.

In sum, the questions and evidence material to resolving NMMs' claims and Defendants' exemption defenses are common to all class members and predominate this action. Class certification is appropriate.

## CONCLUSION

For these reasons and those stated in Plaintiff's opening memorandum, Plaintiff respectfully requests that the Court grant her motion.

DATED: May 30, 2023                                **NICHOLS KASTER, PLLP**

/s/ *Rachhana T. Srey*
Rachhana T. Srey, MN Bar No. 340133
Caitlin L. Opperman, MN Bar No. 0399978
4700 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
srey@nka.com
copperman@nka.com

**Attorneys for Plaintiff, the FLSA Collective, and Minnesota Rule 23 Class**