**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

CHRISTINE LEARING, *individually
and on behalf of all others similarly
situated*,

               Plaintiff,

v.

THE ANTHEM COMPANIES, INC.,
AMERIGROUP CORPORATION, and
AMERIGROUP PARTNERSHIP PLAN,
LLC,

               Defendants.

Case No. 21-cv-2283 (LMP/DJF)

**ORDER DENYING DEFENDANTS'
MOTION FOR
PRE-TRIAL DISCOVERY**

---

Rachhana T. Srey, Caitlin L. Opperman, and Michele R. Fisher, **Nichols Kaster, PLLP, Minneapolis, MN**; Caroline E. Bressman, **Cohen Milstein Sellers & Toll PLLC, Washington, D.C.**, for Plaintiff.

Brett C. Bartlett, Kevin M. Young, Lennon B. Haas, Shannon Cherney, and William B. Hill, Jr., **Seyfarth Shaw LLP, Atlanta, GA**; Thomas J. Posey, **Seyfarth Shaw LLP, Chicago, IL**, for Defendants.

Plaintiff Christine Learing ("Learing")[1] initiated this collective and class action against Defendants Anthem Companies, Inc., Amerigroup Corporation, and Amerigroup Partnership Plan, LLC (collectively, "Anthem"), in October 2021. *See* ECF No. 1. Learing alleges that Anthem engaged in a scheme to misclassify certain employees, including

---

[1] Although Learing brings claims on behalf of an FLSA collective and a class of Plaintiffs pursuant to Federal Rule of Civil Procedure 23, the Court herein refers to Learing and the members of the FLSA collective and Rule 23 class collectively as "Learing" unless otherwise indicated.

herself, as exempt from overtime laws and deprived those employees of overtime compensation they earned in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207; the Minnesota Fair Labor Standards Act ("MFLSA"), Minn. Stat. § 177.25; and the Minnesota Payment of Wages Act ("MPWA"), Minn. Stat. § 181.101.  *See* ECF No. 90 at 14–17.  Now, two years after the close of fact discovery and nearly one year after the Court certified a class of plaintiffs pursuant to Federal Rule of Civil Procedure 23, Defendants ask the Court to permit them to seek additional, "limited" discovery from absent class members.  *See* ECF No. 237.  For the reasons set forth below, Defendants' motion is denied.

## BACKGROUND

Learing, who worked for Anthem as a nurse medical manager ("NMM"), filed her original complaint on October 14, 2021.  ECF No. 1.  Learing asserts claims under the FLSA, MFLSA, and MWPA on her own behalf, on behalf of an FLSA collective of Anthem NMMs pursuant to 29 U.S.C. § 216(b), and on behalf of a putative class of Anthem NMMs pursuant to Federal Rule of Civil Procedure 23.  *See generally* ECF No. 90.  Relevant here, Learing alleges that Anthem failed to maintain accurate records of the hours she and other similarly situated NMMs worked.  *Id.* at 10, ¶ 62.  Anthem denies that allegation in its answer, ECF No. 97 at 17–18, ¶ 62, but in a deposition taken pursuant to Federal Rule of Civil Procedure 30(b)(6), an Anthem representative testified that Anthem does not have a system for tracking the number of hours NMMs work and that "[i]f anyone would track their time, it is them doing it on their own," ECF No. 242-3 at 147:4–8.

On December 1, 2021, the parties submitted their joint Rule 26(f) conference report, wherein they noted their disagreement as to Anthem's intention to seek discovery before the then-putative FLSA collective could be conditionally certified. *See* ECF No. 21 at 5– 11. The Court entered an initial pretrial scheduling order on December 8, 2021, which expressly states that it "may be modified only upon a showing of good cause as required by Federal Rule of Civil Procedure 16(b)(4) and Local Rule 16.3." ECF No. 24 at 1. The initial scheduling order imposed limits on the types of discovery that could be sought and tacitly permitted Anthem to begin serving discovery requests, but it did not establish a date by which discovery would conclude. *See id.* at 2. The same day, Anthem served its first set of written discovery requests. ECF No. 242-1 at 11; *see* ECF No. 242 ¶ 3.

The Court conditionally certified the FLSA collective on February 28, 2022, and defined the collective as:

> All persons who worked as Medical Management Nurses, Utilization Management Nurses, or Utilization Review Nurses, or in similar job titles who were paid a salary and treated as exempt from overtime laws, and were primarily responsible for performing medical necessity reviews for [Anthem] in Minnesota from three years prior to the filing of [the] Complaint through judgment.

ECF No. 49 at 13. Opt-in notices were sent to approximately sixty-five NMMs who were employed by Anthem during the relevant time period. ECF No. 147 at 3; *see* ECF No. 192 at 11. By the end of the notice period in May 2022, twenty-four NMMs, including Learing (the "Opt-In Plaintiffs"), had opted into the conditional FLSA collective. ECF No. 147 at 3.

3

The parties subsequently conferred and submitted a proposed amended scheduling order. ECF No. 72. The parties disagreed about the proper scope of discovery as it pertained to the Opt-In Plaintiffs: Learing argued that only representative discovery was appropriate, while Anthem argued that it should be permitted to seek discovery for each Opt-In Plaintiff individually. *Id*. at 1–3. The Court issued an amended pretrial scheduling order on July 6, 2022, stating again that it "may be modified only upon a showing of good cause as required by Federal Rule of Civil Procedure 16(b)(4) and Local Rule 16.3." ECF No. 75 at 1. The Court set the deadline for completion of fact discovery for December 15, 2022, ordered that "written and deposition discovery should proceed for a representative group" of eight Opt-In Plaintiffs, and directed the parties to confer to determine "how to choose a representative sample." *Id.* The parties later jointly moved twice for extensions of the fact discovery deadline, which the Court granted upon findings of good cause. ECF No. 108 at 2; ECF No. 117. Fact discovery ultimately concluded on February 28, 2023. ECF No. 117.

Shortly after the Court issued the amended scheduling order in July 2022, the parties began negotiating how to select the representative group of eight Opt-In Plaintiffs who would be subject to discovery, including discussions regarding who may or may not be called to testify at trial. ECF No. 242 ¶ 4. On December 8, 2022, the parties reached an agreement as follows:

    a.    **Testifying Plaintiffs.** The parties agreed to select eight Opt-in Plaintiffs to serve, along with Plaintiff Learing, as "testifying Plaintiffs" for purposes of depositions for discovery, dispositive motions practice (including motions for summary judgment and decertification), and trial;

b.      **Random Selection.**  The testifying Opt-In Plaintiffs were selected using random stratified sampling;

c.      **Depositions.**  If a testifying Opt-In Plaintiff or Plaintiff Learing did not appear for their deposition (*i.e.*, was a "no show" without an excusable reason), then an alternate testifying Opt-in would be selected for deposition;

d.      **Written Discovery.**  The parties agreed that [Anthem] could serve written discovery on all the remaining Opt-In Plaintiffs who had not been previously served with discovery;

e.      **Additional Plaintiffs.**  Either party could add up to two (2) additional testifying Opt-In Plaintiffs for dispositive motions and/or trial as long as the addition was made no later than the later of (i) fifteen (15) days after the random sample was finalized or (ii) thirty (30) days before the motion deadline and/or final pretrial conference; and

f.      **Summary Judgment, Decertification, and Trial.**  The parties agreed that neither side may submit testimony at trial for any Plaintiffs who are not designated a testifying Plaintiff[] by operation of the terms of the agreement.  This provision does not prohibit either side, however, from presenting testimony or evidence from individuals other than the Plaintiffs at any stage of the proceedings, including trial, subject to applicable procedural and evidentiary rules, orders, and the like.  Nothing in the parties' agreement requires either party to call all, or any, of the testifying Opt-In Plaintiffs as witnesses at trial.

*Id.* ¶ 5.

Pursuant to the agreement, the parties randomly selected eight representative Opt-In Plaintiffs on January 3, 2023.  *Id.* ¶ 6.  Anthem also exercised its right to select two additional Opt-In Plaintiffs for dispositive motions and trial on February 10, 2023.  *Id.* ¶ 8.  Altogether, from December 8, 2022, when Anthem served its first set of written discovery requests, ECF No. 242-1 at 11, through February 28, 2023, when fact discovery ended, ECF No. 117, Anthem obtained written discovery from eighteen Opt-In Plaintiffs, including Learing, ECF No. 241 at 5.  Anthem also deposed eleven Opt-In Plaintiffs, including Learing.  *Id.*

On April 24, 2023, the parties filed cross-motions for summary judgment.[2]  ECF Nos. 126, 139.  Learing also moved for certification of a class for the MFLSA and MPWA claims pursuant to Federal Rule of Civil Procedure 23, ECF No. 145, and Anthem moved to decertify the conditionally certified FLSA collective, ECF No. 133.  On March 22, 2024, the Court issued an order granting Learing's motion for partial summary judgment, denying Anthem's motion for summary judgment, certifying a Rule 23 class for the MFLSA and MPWA claims (the "Minnesota Class"),[3] and denying decertification of the FLSA collective.  ECF No. 192 at 31–32.

Following certification of the Minnesota Class, Learing proposed a class notice to be delivered to potential Minnesota Class members pursuant to Federal Rule of Civil Procedure 23(c)(2)(B).  ECF Nos. 196, 196-1.  Anthem raised several concerns and objections to Learing's proposed notice, including that it did not inform potential Minnesota Class members that they may be subject to discovery.[4]  *See* ECF No. 200 at 2–3.  After the parties filed letters detailing their arguments related to Anthem's objections, *see* ECF Nos. 206, 211, the Court directed the parties to informally resolve Anthem's

---

[2]     Learing moved only for partial summary judgment regarding two exemption defenses and the good-faith defense against willfulness under the FLSA.  *See* ECF No. 128 at 1–2.  Anthem moved for summary judgment as to its liability.

[3]     The Minnesota Class was defined identically, in substantive part, to the FLSA collective.  *Compare* ECF No. 49 at 13, *with* ECF No. 192 at 31–32.

[4]     The basis of Anthem's objection on this point was an order from United States Magistrate Judge Dulce J. Foster ordering the parties to meet and confer regarding settlement.  ECF No. 193.  Magistrate Judge Foster directed the parties to submit confidential letters describing, in relevant part, "what additional discovery or motion practice might be needed to maximize the chances of reaching a settlement" after they conferred.  *Id.*

proposal regarding potential discovery obligations for Minnesota Class members, and to submit a joint proposed class notice, *see generally* ECF No. 212. Pursuant to the Court's order, the parties submitted a joint proposed class notice, ECF Nos. 213, 213-1, which the Court approved on June 28, 2024, ECF No. 216.

Upon conclusion of the class notice period, Learing requested a case management conference "to discuss the remaining litigation in this case, including setting a trial date." ECF No. 219 at 2. The Court granted Learing's request in part: rather than scheduling a case management conference, the Court ordered the parties to "confer and submit a joint proposed scheduling order for the remaining litigation in this case, including proposed trial dates and pretrial deadlines" and to indicate "[a]ny areas of disagreement about the schedule." ECF No. 220. The parties disagreed about several issues, including whether discovery should be re-opened so that Anthem could seek additional discovery from absent Minnesota Class members regarding the number of hours they worked each week during the relevant period. *See* ECF No. 223 at 4–11.

After the case was reassigned to the undersigned United States District Judge, the Court held a status conference on December 13, 2024, to discuss the issues raised in the parties' proposal. ECF No. 233. The Court noted that discovery in this case had "long been closed" and informed Anthem that "good cause" would need to be shown to reopen discovery. ECF No. 235 at 12:3–12. The Court declined to formally rule on any of the issues the parties' raised in their joint proposal and instead instructed the parties to confer and attempt to resolve those issues informally and to file motions if no agreement could be reached. *See id.* at 51:14–52:8; *see also* ECF No. 233.

The parties were unable to reach agreement regarding Anthem's request for additional discovery, and Anthem filed the instant motion on January 10, 2025. ECF No. 237. Anthem notes that "[a]lthough the FLSA affords non-exempt employees overtime" compensation for work performed in excess of forty hours per week, "Minnesota law requires that employees work more than [forty-eight] hours" before they are eligible for overtime compensation. ECF No. 239 at 1. This difference, Anthem argues, "goes to both the core question of liability under the MFLSA and thus the 'irreducible constitutional minimum' of class member standing." *Id.* at 10 (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009)). Because some Opt-In Plaintiffs indicated in written discovery responses that they averaged fewer than forty-eight hours of work per week during the relevant period, Anthem seeks discovery to determine whether the absent Minnesota Class members have standing to bring claims under the MFLSA because "[i]f members who lack the ability to bring a suit themselves are included in a class, the court lacks jurisdiction over their claims." *See id.* at 10–12 (quoting *Johannessohn v. Polaris Indus.*, 9 F.4th 981, 987 (8th Cir. 2021)). Anthem further argues that the discovery it seeks "is critical to the manageability of the class proceedings and any question of damages that may arise under either the MFLSA or the FLSA." *Id.* at 12.

Learing responds that Anthem's argument relating to standing is "not supported by the record" and that "[e]ven assuming there are absent class members who do not exceed the 48-hour threshold during at least one workweek within the class period, this is not a standing issue" but rather a merits or damages issue. ECF No. 241 at 23–24. As to the

workability of a trial plan, Learing notes that the parties' prior agreement regarding who may testify at trial negates the need for additional discovery. *Id.* at 22–23.

## ANALYSIS

Although Anthem formally requests that the Court permit it to seek written and deposition discovery from absent Minnesota Class members, Anthem's argument implicates the absent Minnesota Class members' standing to sue. Given the necessary threshold of standing in every federal case, *see Becker v. N.D. Univ. Sys.*, 112 F.4th 592, 595 (8th Cir. 2024), the Court addresses the standing issue before turning to Anthem's request for additional pre-trial discovery.

## I.  Article III Standing

To satisfy the "irreducible constitutional minimum" of establishing standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Arc of Iowa v. Reynolds*, 94 F.4th 707, 710 (8th Cir. 2024) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339. "It is crucial, however, not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive." *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021) (citation omitted).

"The requirements for standing do not change in the class action context." *In re Supervalu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017) (citing *Spokeo*, 578 U.S. at 338 n.6).

The fact that a suit is a class action "adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Spokeo*, 578 U.S. at 338 n.6 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)); *see also* 1 William B. Rubenstein et al., *Newburg and Rubenstein on Class Actions* § 2:3 (6th ed. 2022, Nov. 2024 update) ("If a class representative has standing, the case is justiciable[,] and the proponent of the class suit need not demonstrate that each class member has standing.").

Learing is the sole, named representative for the Minnesota Class. *See* ECF No. 192 at 32. Learing has alleged, both individually and on behalf of the Minnesota Class, that Anthem misclassified her and other Minnesota Class members as exempt from overtime laws, permitted them to work overtime as defined by the MFLSA—that is, more than forty-eight hours—in certain workweeks, and did not adequately compensate them for the overtime work they performed. *See* ECF No. 90 ¶¶ 52, 56, 58. Learing specifically alleges that during at least one week during the relevant period, she worked an estimated fifty-one hours for Anthem "and did not receive overtime pay for her overtime hours." *Id.* ¶ 59. Learing, as the class representative, clearly satisfies the injury-in-fact requirement for Article III standing. *See Lucas v. Jerusalem Cafe, LLC*, 721 F.3d 927, 937 (8th Cir. 2013) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)) ("[T]he underpayment for *actual* work [is] 'an injury in fact.'"); *see also Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 693 (8th Cir. 2017) (quoting *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017)) ("For standing purposes, a loss of even a small amount of money is ordinarily

an 'injury.'").  And "federal courts do not require that each member of a class submit

evidence of personal standing."  *Johannessohn*, 9 F.4th 981, 987 (8th Cir. 2021) (citation

omitted).

Anthem's argument that discovery responses from Opt-In Plaintiffs—who are also

Minnesota Class members—estimating that they averaged fewer than forty-eight hours of

work per week during the relevant period shows that some absent Minnesota Class

members lack standing "conflate[s] Article III's requirement of injury in fact" with the

Minnesota Class's cause of action under the MFLSA.  *Turtle Island Foods*, 992 F.3d at

699.  In the context of a certified Rule 23 class action, the absent class members' standing

is closely linked to certification of the class itself, including how the class is defined.  *See*

*Johannessohn*, 9 F.4th at 987 (citation omitted) ("A class must . . . be defined in such a way

that anyone within it would have standing.").  On this point, the "law of the case" doctrine[5]

is relevant, especially since the evidence Anthem cites here was available to Anthem—and

was cited by Anthem, *see* ECF No. 168 at 14—at the class certification stage.  *See Day v.*

*Celadon Trucking Servs., Inc.*, 827 F.3d 817, 832 (8th Cir. 2016).  In *Day*, as here:

> [T]he district court certified the class, ordered that notices be sent out to
> potential class members, and granted partial summary judgment in favor of
> the class.  Where litigants have once battled for the court's decision, they

---

[5]    The law-of-the-case doctrine provides that "when a court decides upon a rule of law,
that decision should continue to govern the same issues in subsequent stages of the
same case."  *Maxfield v. Cintas Corp., No. 2*, 487 F.3d 1132, 1134–35 (8th Cir. 2007) (cleaned
up) (quoting *Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 807
F.2d 1433, 1440–41 (8th Cir. 1986)).  The doctrine is intended to "prevent[] the relitigation
of settled issues in a case, thus protecting the settled expectations of the parties, ensuring
uniformity of decisions, and promoting judicial efficiency.'"  *Id.* (quoting *Little Earth*, 807
F.2d at 1440–41).

should neither be required, nor without good reason permitted, to battle for it again. [Employer] had a full and fair opportunity to contest class certification. In approving the notice to potential class members, the district court noted that the employees addressed the objections that [Employer] raised[,] and [Employer] did not file any additional objections. After receiving the attention and consideration of the district court on this issue, principles of fair adjudication require [Employer] to provide good reason before the district court revisits the issue.

*Id.* (cleaned up) (internal citation omitted) (footnote omitted).

Anthem has not "provide[d] good reason" to "revisit[] the issue" of class certification. *Id.* While the Minnesota Class as defined in the certification order does not expressly reference the forty-eight-hour threshold for overtime compensation eligibility under the MFLSA, *see* ECF No. 192 at 31–32, the class notices that were delivered to then-potential Minnesota Class members informed them that this case is "[a] lawsuit claiming Anthem didn't pay for overtime worked *over 48 hours per week*," ECF No. 216-1 at 1 (emphasis added). The Court is satisfied that the notices sent to then-potential Minnesota Class members adequately informed them of who fits—and perhaps more important, who *does not* fit—within the class definition such that those who remain in the Minnesota Class would have standing. *See Johannessohn*, 9 F.4th at 987.

In sum, whether the Minnesota Class members can prove at trial that they worked more than forty-eight hours in any week during the relevant period goes to the merits of their claims and the potential damages they may be awarded upon a favorable verdict, not to their standing to sue. *See Turtle Island Foods*, 992 F.3d at 699; *see also Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 797–98 (8th Cir. 2014) (emphasis added) (affirming certification of a Rule 23 class where "evidence *at trial* showed that some class members

did not work overtime and would receive no FLSA damages"), *aff'd and remanded*, 577 U.S. 442 (2016).

## II.  Anthem's Motion for Pre-Trial Discovery

Having addressed Anthem's argument implicating the Minnesota Class members' standing, the Court turns to Anthem's request for additional pre-trial discovery.  Anthem frames its motion as a request that the Court "order discovery of [a] matter relevant to the subject matter involved in the action."  ECF No. 239 at 8 (citing Fed. R. Civ. P. 26(b)(1)).  But Anthem's "motion is, in effect, a motion under [Federal Rule of Civil Procedure] 16(b)(4) and [District of Minnesota Local Rule] 16.3(a) to modify the scheduling order by extending the fact-discovery deadline."  *Land O' Lakes, Inc. v. Emps. Mut. Liab. Ins. Co. of Wis.*, 846 F. Supp. 2d 1007, 1017 (D. Minn. 2012).

### A.  Legal Standard

"Once discovery has closed, it is within the district court's discretion whether or not to allow it to be reopened."  *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1024 (8th Cir. 2003) (citation omitted); *see also, e.g.*, *In re Baycol Prods. Litig.*, 596 F.3d 884, 888 (8th Cir. 2010) ("District courts have broad discretion in establishing and enforcing deadlines and in maintaining compliance with discovery and pretrial orders.").  "Despite a district court's discretion to reopen discovery," however, Rule 16(b)'s good-cause standard "must be met before a scheduling order is modified."  *Cincinnati Ins. Co. v. Rymer Cos.*, No. 19-cv-1025 (ECT/TNL), 2024 WL 4024806, at *2 (D. Minn. Jan. 30, 2024) (citing *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716–17 (8th Cir. 2008)); *see also* Fed. R. Civ. P. 16(b)(4); D. Minn. L.R. 16.3(a).

"The movant's diligence in attempting to meet the case management order's requirements is the 'primary measure' of good cause." *Midwest Med. Sols., LLC v. Exactech U.S., Inc.*, 95 F.4th 604, 607 (8th Cir. 2024) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)). "[P]rejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor," but courts generally "will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines." *Sherman*, 532 F.3d at 717 (citing *Bradford*, 249 F.3d at 809). "Where there has been no change in the law, no newly discovered facts, or any other changed circumstance" after a deadline in the scheduling order has passed, a court "may conclude that the moving party has failed to show good cause." *Midwest Med. Sols.*, 95 F.4th at 607 (internal quotation marks omitted) (citation omitted).

## B.    Good Cause

Anthem has not shown good cause to reopen discovery in this case.  In fact, despite every scheduling order entered in this case explicitly stating that the schedule "may be modified only upon a showing of good cause as required by Federal Rule of Civil Procedure 16(b)(4) and Local Rule 16.3," *see, e.g.*, ECF No. 75 at 1, and the Court's express reference to the requisite showing of diligence at the December 2024 status conference, ECF No. 235 at 20:18–24, Anthem does not meaningfully address the applicable good-cause standard under Rule 16(b).[6]  As far as the Court can discern, the

---

[6]    For example, the word "diligence," or any variation thereof, does not appear a single time in Anthem's memorandum of law in support of its motion.  *See generally* ECF No. 239.  Indeed, Anthem does not even cite Rule 16(b).  *See generally id.*

14

only "cause" Anthem cites to reopen discovery in this case is that the discovery it seeks is "relevant to the subject matter involved in the action." ECF No. 239 at 8 (citing Fed. R. Civ. P. 26(b)(1)). But the relevance standard under Rule 26(b)(1) establishes the scope of discoverable information; it says nothing about extending a discovery deadline that has long passed. *See* Fed. R. Civ. P. 26(b)(1). And no matter how relevant the discovery Anthem seeks may be, relevance alone cannot establish good cause under Rule 16(b). *See Land O' Lakes*, 846 F. Supp. 2d at 1017 (holding that potential discovery of "helpful" and "new information . . . does not qualify as 'good cause' for modifying the scheduling order").

Anthem first raised the issue of absent Minnesota Class member discovery in an April 2024 letter detailing its objections to Learing's proposed Minnesota Class notice.[7] *See* ECF No. 200 at 2–3. By that point, discovery in this case had been closed for more than thirteen months. *See* ECF No. 117 (setting close of fact discovery for February 28, 2023). Anthem again raised the issue in the parties' joint proposed scheduling order in September 2024—nineteen months after the close of fact discovery, and six months after the Court issued its order certifying the Minnesota Class. *See* ECF No. 223 at 4, 8–11, 15.

---

[7]    Anthem cited an order entered by Magistrate Judge Foster which directed the parties to submit confidential letters describing any settlement discussions that had occurred between them and, in relevant part, "what additional discovery or motion practice might be needed to maximize the chances of reaching a settlement." ECF No. 193; *see* ECF No. 200 at 2. Anthem appears to have understood Magistrate Judge Foster's order as confirmation that more discovery was necessary or would be authorized in this case. *See* ECF No. 200 at 2–3. Magistrate Judge Foster's order made no such guarantee. *See* ECF No. 193.

The Court later held a status conference to attempt to resolve Anthem's request for additional discovery informally in December 2024—twenty-two months after the close of fact discovery, and nine months after the Court's class certification order.  *See* ECF No. 233.  It was not until January 2025—nearly two years after the close of fact discovery—that Anthem formally moved to reopen discovery.  *See* ECF No. 237.  Nothing in the Federal Rules of Civil Procedure, this District's Local Rules, or this Court's prior orders prevented Anthem from formally moving to extend the deadline or reopen discovery earlier.  *See* Fed. R. Civ. P. 16(b)(4); D. Minn. L.R. 16.3(a); ECF No. 75 at 1.  Courts in this District have found a lack of good cause to modify a scheduling order and reopen discovery where the movants requested such modification even closer to the passed discovery deadline.  *See, e.g.*, *E.E.O.C. v. Prod. Fabricators, Inc.*, 285 F.R.D. 418, 421–22 (D. Minn. 2012) (finding no good cause where moving party waited more than three months after discovery deadline to seek extension); *N. Star Mut. Ins. Co. v. Zurich Ins. Co.*, 269 F. Supp. 2d 1140, 1145 (D. Minn. 2003) (finding no good cause where moving party waited four months after discovery deadline to seek extension).

Besides the delay, Anthem has been on notice that Learing intended to bring claims on behalf of a Rule 23 class of plaintiffs since she filed her original complaint in November 2021.  *See* ECF No. 1 ¶¶ 39–47.  Anthem was in the best position to know who the potential members of the Minnesota Class were and, in fact, was required to furnish the names of those individuals for the purpose of sending class notices.  ECF No. 216.  Anthem knew that the Opt-In Plaintiffs would be members of the Minnesota Class if the Minnesota Class was certified.  ECF No. 168 at 1.  And Anthem cites the same discovery responses here,

ECF No. 239 at 11–12, that it cited in opposition to certification of the Minnesota Class, ECF No. 168 at 14.  That Anthem did not specifically or directly ask the Opt-In Plaintiffs whether they ever worked more than forty-eight hours in any week during the relevant period, *see, e.g.*, ECF No. 240-1 at 2–5, was its own choice, *see* ECF No. 235 at 15:6–16:6.  Moreover, the written discovery Anthem proposes now still lacks any reference to the forty-eight-hour threshold for overtime eligibility under the MFLSA.  *See* ECF No. 239 at 9.

Fourteen months passed between when Anthem served its first set of discovery requests, ECF No. 242-1 at 11, and when fact discovery closed, ECF No. 117.  "[T]here has been no change in the law, no newly discovered facts, or any other changed circumstance" since then to warrant reopening discovery at this very late stage of these proceedings.  *Midwest Med. Sols.*, 95 F.4th at 607.

### C.    Absent Class Member Discovery

Although Anthem's motion fails because Anthem has not shown good cause, a separate, independent reason supports denial of Anthem's motion: the type and scope of discovery Anthem seeks is far broader and more extraordinary than Anthem suggests.[8] Generally, "absent class members are not considered parties to a case." *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, No. 10-cv-4372 (DWF/JJG), 2012 WL

---

[8]    Anthem repeatedly characterizes the discovery it seeks as "limited." *See, e.g.*, ECF No. 239 at 9 ("There is good cause to permit limited discovery, and what [Anthem] seek[s] is indeed limited.").  The Court understands Anthem's request to seek discovery from every single class member who was not previously subject to discovery. It is unclear to the Court how, for example, Anthem's request to conduct as many as forty-five depositions of absent class members, *see id.*, is anything resembling "limited."

12898811, at *2 (D. Minn. July 27, 2012) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985)).  As such, "[c]ourts typically limit discovery to named plaintiffs or class representatives." *In re Nat'l Hockey League Players' Concussion Inj. Litig.*, No. 14-md-2551 (SRN/JSM), 2015 WL 1191272, at *4 (D. Minn. Mar. 16, 2015); *see Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, No. 5-cv-2809 (JRT/JJG), 2008 WL 11374372, at *2 (D. Minn. Jan. 14, 2008) (citing *Phillips Petroleum Co.*, 472 U.S. at 810) ("One of the purposes of having class representatives is that they, not all absent class members, shoulder the burden of litigating the case, including responding to discovery."). A court, nevertheless, may allow a party to seek discovery from absent Rule 23 class members if the requested discovery "touches on 'significant and far-reaching issues'" in the case.  *In re Airline Ticket Comm'n Antitrust Litig.*, 918 F. Supp. 283, 287 (D. Minn. 1996) (quoting *Minnesota v. U.S. Steel Corp.*, 438 F.2d 1380, 1384–85 (8th Cir. 1971)). Such discovery is permissible if the proponent "demonstrate[s] a specific need" for the discovery. *Owner-Operator*, 2008 WL 11374372, at *2 (citing *Airline Ticket Comm'n*, 918 F. Supp. at 287).

Although the Eighth Circuit has not articulated a test to balance these competing interests, courts in this District have allowed parties to seek discovery from absent class members where the proponent demonstrates that:

> (1) the purpose of the discovery is not to take undue advantage of class members or reduce the size of the class; (2) the information requested is relevant to the decision of common questions of the class and unavailable from the representative parties; and (3) the matters are not known to defendants.

*Robin Drug Co. v. PharmaCare Mgmt. Servs., Inc.*, No. 3-cv-3397 (DSD/JJG), 2006 WL 8445130, at *3 (D. Minn. July 5, 2006) (citations omitted).  While Anthem arguably could satisfy the second prong, as the requested discovery is relevant to common questions of the class, Anthem cannot satisfy the first and third prongs.

Anthem's strongly implied (if not express) purpose in seeking the "limited" discovery it proposes is to reduce the size of the Minnesota Class, or to eliminate it entirely. *See, e.g.*, ECF No. 239 at 17 ("It is highly probable that the limited discovery that Defendants propose will serve to highlight more clearly that this case cannot be tried effectively or fairly as a class action . . . ."); *id.* at 10 ("The class discovery [Anthem] seek[s] . . . goes to both the core question of liability under the MFLSA and thus the 'irreducible constitutional minimum' of class member standing.").  These rationales are directly at odds with the first prong of not taking undue advantage of the class members or reducing the class's size.  *See Robin Drug*, 2006 WL 8445130, at *3.

As to the third prong—whether the hours worked of class members was known to Defendants—while it may be true that the number of hours the absent Minnesota Class members worked is unknown to Anthem, that is due primarily (if not entirely) to Anthem's apparent failure to keep and maintain accurate records of such hours worked.  *See* ECF No. 242-3 at 147:4–8 (Anthem representative testifying that Anthem did not have a system to track NMMs' hours and that "[i]f anyone would track their time, it is them doing it on their own").  In overtime compensation cases in this Circuit, it is well established that "[i]f an employer has failed to keep records, employees are not denied recovery . . . simply because they cannot prove the precise extent of their uncompensated work."  *Holaway v.*

*Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014) (citation omitted); *accord Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946) ("The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [the FLSA]."). In short, Anthem may not obtain through generally impermissible discovery from absent Minnesota Class members the kind of information that it had a legal duty to keep and maintain itself.

Finally, and importantly, Anthem has already obtained substantially more discovery than it would ordinarily be permitted to seek by virtue of the hybrid nature of this case. While Anthem attempts to distinguish the discovery it has obtained from the Opt-In Plaintiffs from the discovery it seeks from the absent Minnesota Class members, Anthem glosses over the fact that the Opt-In Plaintiffs are *also* Minnesota Class members. *See* ECF No. 223 at 8; ECF No. 168 at 1. Including Learing, Anthem has obtained written discovery from eighteen of the approximately sixty-five Minnesota Class members and deposition testimony from eleven of those eighteen. *See* ECF No. 223 at 8; *see also* ECF No. 241 at 20. This aligns with the agreement the parties reached regarding "testifying Plaintiffs" who would be subject to discovery and may be called as witnesses at trial. ECF No. 242 ¶ 5. Anthem has known from the outset of this case that Learing intended to bring her MFLSA and MPWA claims as a representative of a Rule 23 class. *See* ECF No. 1 ¶¶ 39–47. And again, Anthem chose not to inquire specifically as to the forty-eight-hour overtime threshold in the written discovery it served on and the depositions it took of then-potential Minnesota Class members during discovery in this case. *See* ECF No. 235 at 15:6–16:6.

20

Whether Learing will be able to offer a manageable trial plan, ECF No. 239 at 12–16, is an issue for Learing to resolve, and in any event, the Court need not reach that issue to decide Anthem's motion.[9] As it relates to whether Anthem has demonstrated good cause to reopen discovery at this late stage of these proceedings—the issue presently before the Court—the Court finds that it has not.  Accordingly, Anthem's motion is denied.

---

[9]    The Court notes, however, that Anthem's complaints about the use of representative testimony and evidence to establish liability, *see* ECF No. 239 at 13–16, ring hollow in light of precedent from the Supreme Court permitting the use of such evidence in cases like this one.  *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454–55 (2016).  In fact, the Supreme Court has expressly declined to prohibit representative testimony in overtime compensation cases, explaining that "[a] categorical exclusion of that sort . . . would make little sense" because "[a] representative or statistical sample, like all evidence, is a means *to establish or defend against liability*." *Id.* (emphasis added).  The "permissibility" of such evidence "turns not on the form a proceeding takes—be it a class or individual action—but on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action."  *Id.* at 455 (citations omitted); *see also, e.g.*, *Monroe v. FTS USA, LLC*, 860 F.3d 389, 408 (6th Cir. 2017) ("In FLSA cases, the use of representative testimony to establish class-wide liability has long been accepted."); *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1278–79 (11th Cir. 2008) (citations omitted) ("Although *Mt. Clemens* never used the term 'representative testimony,' subsequent courts have interpreted it to authorize some employees to testify about the number of hours they worked and how much they were paid so that other non-testifying plaintiffs could show the same thing by inference."); *Borup v. CJS Sols. Grp., LLC*, 333 F.R.D. 142, 148 (D. Minn. 2019) (citation omitted) ("[C]ourts may proceed on representative evidence and enter a single judgment for all plaintiffs as individuals, although the judgment will reflect the aggregated damages of all the party plaintiffs.").  Anthem may, of course, proffer its own evidence and cross-examine any witnesses called by Learing at trial to attempt to establish that any representative evidence and testimony proffered by Learing is unreliable.  *See Mt. Clemens*, 328 U.S. at 687–88.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this matter,

**IT IS HEREBY ORDERED** that Anthem's Motion for Pre-Trial Discovery (ECF No. 237) is **DENIED**.


Dated: March 24, 2025                    *s/Laura M. Provinzino*
                                         Laura M. Provinzino
                                         United States District Judge