## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| CHRISTINE LEARING, *individually and on behalf of all others similarly situated*, | Case No. 21-cv-2283 (LMP/DJF) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART DEFENDANTS' MOTION FOR RECONSIDERATION** |
| THE ANTHEM COMPANIES, INC.; AMERIGROUP CORPORATION; and AMERIGROUP PARTNERSHIP PLAN, LLC, | |
| Defendants. | |

---

Caitlin L. Opperman and Rachana T. Srey, **Nichols Kaster, PLLP, Minneapolis, MN,** for Plaintiff.

Brett C. Bartlett, Kevin M. Young, and Lennon B. Haas, **Seyfarth Shaw LLP, Atlanta, GA**; and Thomas J. Posey, **Seyfarth Shaw LLP, Chicago, IL**, for Defendants.

Defendants Anthem Companies, Inc., Amerigroup Corporation, and Amerigroup Partnership Plan, LLC (collectively, "Anthem"), ask the Court to reconsider its March 2024 order granting, in relevant part, partial summary judgment in favor of Plaintiff Christine Learing ("Learing") as to two of Anthem's affirmative defenses in this overtime compensation dispute. *See* ECF No. 254. For the reasons discussed below, the Court grants Anthem's motion in part and denies it in part.

## FACTUAL BACKGROUND

Anthem is a health insurance company that provides managed care programs and related services. ECF No. 97 ¶ 14. Blue Cross Blue Shield of Minnesota ("BCBS"),

another managed care organization, contracts with Minnesota's Department of Human Services to manage Medicaid plans in Minnesota. ECF No. 129-59 at 11:23–13:2. BCBS, in turn, subcontracts with Anthem to provide certain managed care services for those Medicaid plans. *Id.* Among the services Anthem provides for BCBS is utilization review, also known as medical necessity review. *See id.*

Learing is a registered nurse ("RN") who was employed by Anthem in a Nurse Medical Management ("NMM") role. ECF No. 129-3 at 2–3.[1] NMMs' primary duty is performing utilization review, which generally involves evaluating service authorization requests submitted by healthcare providers on behalf of their patients to determine whether the requests meet certain clinical criteria that demonstrate the medical necessity of the requested service. ECF No. 131-1 at 2; ECF No. 129-66 at 22:5–12. To assess medical necessity, NMMs consult various sets of guidelines, such as federal and state Medicaid guidelines. *See, e.g.*, ECF No. 131-11; ECF No. 129-16. NMMs typically learn how to perform utilization review through on-the-job training. ECF No. 129-62 at 248:25–249:10; ECF No. 129-67 at 111:6–112:2. NMMs also rely on their clinical background and experience to understand and apply the guidelines. *See, e.g.*, ECF No. 142-28 at 138:16–141:11.

NMMs may approve requests only if the relevant medical necessity criteria are satisfied. *See* ECF No. 131-4 at 3. If the criteria are not satisfied, however, NMMs cannot

---

[1]    Unless otherwise apparent from context—for example, citing to deposition transcripts—when citing documents in the record, the Court cites the page numbers applied by CM/ECF rather than internal pagination.

deny requests themselves. *See id.* Rather, they may document the reasons that the applicable criteria are not satisfied and recommend denial to a medical director, a licensed physician who has authority to make the ultimate denial decision,[2] *see id.*, or refer the request to a case manager without escalating to a medical director, *see* ECF No. 142-24 at 74:5–14. NMMs can also request additional information from the healthcare provider if necessary to determine whether the request should be approved. ECF No. 131-17 at 2–3.

Anthem's contract with BCBS requires Anthem to meet industry standards set by the National Committee for Quality Assurance ("NCQA"), an accrediting organization. ECF No. 129-59 at 52:3–10. NCQA's standards govern several aspects of utilization review programs, including the structure of utilization review teams, the clinical guidelines used for utilization review, and the qualifications that utilization reviewers must possess. *See generally* ECF No. 131-9. Although NCQA's standards do not require that utilization reviewers be RNs, Anthem requires NMMs to have active RN licenses and at least two years of acute care clinical experience. ECF No. 131-49. Anthem also employs licensed practical nurses ("LPNs") and licensed vocational nurses ("LVNs") to perform utilization review work, but RNs review more complex cases than LPNs and LVNs, and the work of LPNs and LVNs is supervised by RNs. ECF No. 129-56 ¶¶ 5–6; ECF No. 142-33 at 17; ECF No. 129-2 at 7. Anthem classifies its NMMs as exempt from overtime-pay regulations

---

[2]    Under Minnesota law, only a licensed physician may deny a health insurance claim. *See* Minn. Stat. § 62M.09, subd. 3(a)–(b).

and pays them on a salary basis, while its LPN and LVN utilization reviewers are classified as non-exempt and paid on an hourly basis.  ECF No. 129-56 ¶¶ 5–6.

To ensure compliance with NCQA standards, Anthem requires NMMs to follow specific processes when performing utilization reviews.  *See* ECF No. 131-14.  Anthem conducts monthly audits to evaluate the timeliness and accuracy of reviews by NMMs, as well as whether NMMs consistently apply the correct guidelines and appropriately document information to support approvals or referrals to a medical director for denials. *See* ECF No. 131-37.  Anthem also conducts annual Inter-Rater Reliability ("IRR") assessments which test NMMs' "consistency and accuracy in the application of criteria" with the goal of reducing or eliminating "barriers to consistency," like variances between NMMs in interpreting and applying criteria and guidelines or ambiguities in how the criteria are written.  ECF No. 131-39 at 3, 15–16.  NMMs must achieve a minimum score of 90% to pass an IRR assessment.  *Id.* at 15.  NMMs who receive a lower score may be placed on a corrective action plan, which may include additional mandatory training or retesting.  *Id.*; *see also* ECF No. 131-40 at 5.

## RELEVANT PROCEDURAL BACKGROUND

Learing filed suit on October 14, 2021, on her own behalf and on behalf of all other similarly situated NMMs.  ECF No. 1.  Learing alleges that Anthem misclassified her and other NMMs as exempt from overtime-pay regulations under the Fair Labor Standards Act ("FLSA") and the Minnesota Fair Labor Standards Act ("MFLSA") and seeks to recover unpaid overtime wages.  *See* ECF No. 90 at 14–19 (Second Amended Complaint).  Anthem

asserts that its NMMs were properly classified as exempt under the FLSA's learned professional or administrative exemptions. *See* ECF No. 97 at 30.

The Court conditionally certified a collective of plaintiffs pursuant to 29 U.S.C. § 216(b) in February 2022, defined as: "All persons who worked as [NMMs] who were paid a salary and treated as exempt from overtime laws, and were primarily responsible for performing medical necessity reviews for [Anthem] in Minnesota from three years prior to the filing of [the] Complaint through judgment." ECF No. 49 at 13. Opt-in notices were sent to approximately sixty-five NMMs who were employed by Anthem during the relevant period, and, by the end of the notice period, twenty-four NMMs, including Learing (collectively, the "Opt-In Plaintiffs"), had joined the conditional collective. ECF No. 147 at 3; *see also* ECF No. 192 at 11. The Court later certified a Rule 23 class of NMMs, which includes the Opt-In Plaintiffs and the remaining similarly situated NMMs who did not opt into the FLSA collective.[3] *See* ECF No. 192 at 31–32.

On April 24, 2023, the parties filed cross-motions for summary judgment. ECF Nos. 126, 139. Learing sought only partial summary judgment as to the applicability of Anthem's exemption defenses, ECF No. 128 at 1–2, while Anthem moved for summary judgment as to its liability, ECF No. 140 at 6–9. On March 22, 2024, the Court entered an order (the "March 2024 Order") granting partial summary judgment to Learing and holding

---

[3]     The Rule 23 class was certified, in relevant part, for Learing's MFLSA claim. The distinction is meaningful: the FLSA requires a non-exempt employee to work more than forty hours in one week to be entitled to overtime pay, 29 U.S.C. § 207(a)(1), while the MFLSA requires such employees to work more than forty-eight hours in one week for overtime-pay eligibility, Minn. Stat. § 177.25, subd. 1.

that Anthem's exemption defenses were inapplicable.  ECF No. 192 at 18–30.  As it pertained to Anthem's exemption defenses, the Court articulated that "it is Anthem's burden to prove than an overtime exemption applies, and it must do so by showing that the employees fit 'plainly and unmistakably within the exemption's terms and spirit.'"  *Id.* at 18 (quoting *Cruz v. Lawson Software, Inc.*, 764 F. Supp. 2d 1050, 1065 (D. Minn. 2011)).

A few months later, the United States Supreme Court granted a petition for a writ of certiorari to resolve a circuit split regarding an employer's burden of proof to establish whether an FLSA exemption applies.  *See E.M.D. Sales, Inc. v. Carrera*, 144 S. Ct. 2656, 2656 (2024).  More specifically, the Supreme Court was asked to decide whether an employer's burden of proof is "preponderance of the evidence" or a "more demanding standard, such as clear and convincing evidence."  *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 47 (2025).  On January 15, 2025, the Supreme Court issued an opinion holding that "the preponderance-of-the-evidence standard governs when an employer attempts to demonstrate that an employee is exempt" from the FLSA's overtime-pay regulations.  *Id.* The Supreme Court did not, however, address or otherwise discuss the "plainly and unmistakably" language that is common in these kinds of cases in the Eighth Circuit, including the March 2024 Order.  *See generally id.*; *see, e.g.*, *Spinden v. GS Roofing Prods. Co.*, 94 F.3d 421, 426 (8th Cir. 1996) (citation omitted) ("The burden is on the employer to prove that this exemption applies by 'demonstrat[ing] that their employees fit plainly and unmistakably within the exemption's terms and spirit.'" (alteration in original)).

Citing the Supreme Court's decision in *E.M.D. Sales*, Anthem sought leave to file a motion for reconsideration regarding the March 2024 Order.  ECF No. 248.  Anthem

contended that it was held to a higher evidentiary burden than preponderance of the evidence on summary judgment and that the decision in *E.M.D. Sales*—in combination with a previous Supreme Court decision involving interpretation of FLSA exemptions, *Encino Motorcars v. Navarro*, 584 U.S. 79 (2018)—constituted a sufficient basis to reconsider the March 2024 Order.  *See* ECF No. 248.

The Court found compelling circumstances to reconsider the March 2024 Order and granted Anthem leave to file its motion for reconsideration.  ECF No. 252.  The Court limited the scope of Anthem's motion to the issue of "whether, and to what extent, the Supreme Court's decision in *E.M.D. Sales* affects this Court's analysis on summary judgment, strictly as it relates to Anthem's 'administrative' and 'professional' exemption defenses."  *Id.* at 3.

## ANALYSIS

"A 'motion for reconsideration' is not described in the Federal Rules of Civil Procedure."  *Peterson v. Travelers Indem. Co.*, 867 F.3d 992, 997 (8th Cir. 2017) (citation omitted).  Nonetheless, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b); *accord Dietz v. Bouldin*, 579 U.S. 40, 46 (2016) ("[A] district court ordinarily has the power to modify or rescind its orders at any point prior to final judgment in a civil case.").  Therefore, the Court may modify the March 2024 Order, if appropriate, because it did not resolve all the claims at issue and no judgment has been entered.  *See* Fed. R. Civ. P. 54(b); ECF No. 192 at 31–32.

7

A district court has "wide discretion" in determining whether to grant a motion for reconsideration. *SPV-LS, LLC v. Transamerica Life Ins. Co.*, 912 F.3d 1106, 1111 (8th Cir. 2019); *see In re Charter Commc'ns, Inc., Sec. Litig.*, 443 F.3d 987, 993 (8th Cir. 2006) ("A district court has broad discretion to reconsider an order granting dismissal or summary judgment . . . ."). Reconsideration is appropriate "to correct manifest errors of law or fact." *Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 721 (8th Cir. 2010) (citation omitted); *see Lovett v. Gen. Motors Corp.*, 975 F.2d 518, 522 (8th Cir. 1992) ("When a district court is convinced that it incorrectly decided a legal question in an interlocutory ruling, the district court may correct the decision to avoid later reversal."). Reconsideration may also be warranted "because of a controlling or significant change in law since the issues were submitted to the court." *Roemen v. United States*, 343 F.R.D. 619, 623–24 (D.S.D. 2023) (citation modified) (collecting cases); *see also, e.g.*, *Grozdanich v. Leisure Hills Health Ctr., Inc.*, 48 F. Supp. 2d 885, 888 (D. Minn. 1999) (collecting cases).

## I.    Effect of *E.M.D. Sales*

As an initial matter, the Court addresses the impact of the Supreme Court's holding in *E.M.D. Sales* on this case. Unsurprisingly, the parties strongly disagree as to the relevance and importance of *E.M.D. Sales*.

Anthem argues that the disputed "plainly and unmistakably" language is inextricably linked to the Supreme Court's instruction that FLSA exemptions were to be "narrowly construed" against employers, beginning with its first articulation in *A.H.*

*Phillips, Inc. v. Walling*, 324 U.S. 490 (1945).[4]  *See* ECF No. 255 at 4–7.  Anthem asserts that those principles, taken together and as applied in the case law (including the March 2024 Order), constitute a heightened evidentiary standard, which the Supreme Court expressly rejected in *Encino Motorcars* and *E.M.D. Sales*.  *See id.*; *see also Encino Motorcars*, 584 U.S. at 88–89 (citation modified) ("Because the FLSA gives no textual indication that its exemptions should be construed narrowly, there is no reason to give them anything other than a fair (rather than a narrow) interpretation."); *E.M.D. Sales*, 604 U.S. at 53–54 (rejecting the argument that "a heightened standard should govern in [FLSA] cases" and holding that "the preponderance-of-the-evidence standard applies when an employer seeks to show that an employee is exempt from the . . . overtime-pay provisions of the [FLSA]").

Learing, largely relying on the Tenth Circuit's opinion in *Lederman v. Frontier Fire Protection, Inc.*, 685 F.3d 1151 (10th Cir. 2012), asserts that "plainly and unmistakably" is not and never was intended to be an evidentiary standard but, instead, was directed toward statutory interpretation of FLSA exemptions.  *See* ECF No. 256 at 4–9.  Learing contends that the phrase "has routinely appeared alongside many courts' recitation of the

---

[4]    The Supreme Court explained its rationale as follows: "The Fair Labor Standards Act was designed 'to extend the frontiers of social progress' by 'insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'  Any exemption from such humanitarian and remedial legislation must therefore be *narrowly construed*, giving due regard to the plain meaning of statutory language and the intent of Congress. To extend an exemption to other than those *plainly and unmistakably* within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people."  *A.H. Phillips*, 324 U.S. at 493 (emphasis added) (internal citation omitted).

9

preponderance-of-the-evidence    standard    of    proof,    reinforcing    that    'plainly    and

unmistakably' relates to statutory construction, not an employer's burden of proof."  *Id.*

at 8 (collecting cases).

Both appear to be correct, at least to some extent.  But the Court agrees with Anthem

that whether "plainly and unmistakably" was *intended to be* an evidentiary standard is a

separate question from whether it has been *applied as* an evidentiary standard.  The Tenth

Circuit's thorough discussion of this issue in *Lederman* is both informative and compelling.

In *Lederman*, the district court gave the following instructions to the jury regarding

FLSA exemption defenses:

> The party asserting a claim or an affirmative defense has the burden
> of proving the essential elements of the claim or affirmative defense
> by a preponderance of the evidence.  To "prove by a preponderance
> of the evidence" means to prove that something is more likely so than
> not so. . . .  The rule does not require proof to an absolute certainty,
> since proof to an absolute certainty is seldom possible in any case.
>
> *An employer seeking an exemption from the overtime requirements of*
> *the FLSA bears the burden of proving that the particular employee fits*
> *plainly and unmistakably within the terms of the claimed*
> *exemption*. . . .
>
> To prove this exemption, the defendants must prove [an FLSA
> exemption applies] by a preponderance of the evidence . . . .

685 F.3d at 1154.  On appeal, the defendant-employer argued that "the trial court erred by

instructing the jury that [Employer] had to prove [Employee] 'fit[] plainly and

unmistakably within the terms of the claimed exemption.'"  *Id.* at 1156 (third alteration in

original).

*Lederman v. Frontier Fire Protection, Inc.* traced the origin of the phrase "plainly and unmistakably" in its own Tenth Circuit case law and Supreme Court precedent. *Id.* at 1156–57. *Lederman* acknowledged that beginning as early as 1993, the phrase had been "misquote[d]" from a 1960 Supreme Court opinion—*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388 (1960)—in its Tenth Circuit decisions. *Lederman*, 685 F.3d at 1156–57; *see also Reich v. Wyoming*, 993 F.2d 739, 741 (10th Cir. 1993). The court further explained that "[m]ore recently, some of [its] opinions may have appeared to support the notion that 'plainly and unmistakably' refers to the employer's burden of proof." *Id.* at 1157. The Tenth Circuit concluded, as Learing argues here, that its "cases employing this phrase have done so in addressing legal rather than factual issues" and do not stand for "the proposition that an employer need prove such an exemption by anything more than a preponderance of the evidence." *Id.* at 1157–58.

Critically, however, the Tenth Circuit found the jury instructions to be erroneous because "the jury should have only been instructed to consider the evidence under the preponderance-of-the-evidence standard." *Id.* at 1158–59. The Tenth Circuit further held that "the district court's instructional error was prejudicial" because "the jury might have based its verdict on the *erroneously given standard of proof.*" *Id.* at 1160 (emphasis added) (internal quotation marks omitted) (citation omitted). Ultimately, the Tenth Circuit vacated the jury's verdict and remanded the case to the district court. *Id.*

To be sure, this case is clearly distinguishable from *Lederman*. Anthem's concerns here relate to the Court's articulation and application of Anthem's burden of proof on summary judgment, not jury instructions given at trial. As such, there is no concern that a

11

jury may have been confused as to how to apply the "plainly and unmistakably" standard for statutory construction purposes and the "preponderance of the evidence" standard for evidentiary sufficiency. But the Court cannot ignore that the Tenth Circuit ultimately found the district court's jury instruction to be reversible error, even though the instruction expressly articulated that the employer's burden of proof was preponderance of the evidence and explained what that standard entails. Given that the Court, on summary judgment, "must view the evidence presented through the prism of the substantive evidentiary burden," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986), it behooves the Court to ensure that the appropriate evidentiary burden is correctly articulated and applied.

Further, as even Learing acknowledges, the evolution of the Eighth Circuit's case law regarding FLSA exemptions is remarkably similar to the Tenth Circuit's. *See* ECF No. 256 at 6–7. Indeed, Learing traces the origin of the disputed "plainly and unmistakably" language in the Eighth Circuit to *McDonnell v. City of Omaha*, 999 F.2d 293 (8th Cir. 1993), which was decided the same year—and, in fact, cited the same Supreme Court opinion, *Arnold*—as *Reich*, the Tenth Circuit case identified as having "misquoted" *Arnold*. *Compare McDonnell*, 999 F.2d at 296 (quoting *Arnold*, 361 U.S. at 392) ("Employers have the burden of proving that the exemption applies, and they must demonstrate that their employees fit 'plainly and unmistakably within the [the exemption's] terms and spirit." (alteration in original)), *with Reich*, 993 F.2d at 741 (quoting *Arnold*, 361 U.S. at 392) ("Exemptions to the FLSA are to be narrowly construed; the employer must show the employees fit 'plainly and unmistakenly within [the exemption's] terms."'"

(alteration in original)); *but see Arnold*, 361 U.S. at 392 ("We have held that these exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit."); *see also Lederman*, 685 F.3d at 1157 (acknowledging that *Reich* "misquoted" *Arnold*).

Learing cites several cases predating both *Encino Motorcars* and *E.M.D. Sales* that reconcile the "plainly and unmistakably" standard for statutory construction with a clear articulation of the preponderance-of-the-evidence standard for the employer's burden of proof. *See* ECF No. 256 at 8–9. But the sole Eighth Circuit decision Learing cites was decided in 1963—thirty years before *McDonnell* which, as Learing acknowledges, appears to have misquoted *Arnold*. *See id.* at 8 (citing *Norman v. Moseley*, 313 F.2d 544, 546–47 (8th Cir. 1963)). And in any event, it cannot be disputed that the March 2024 Order did not expressly articulate that preponderance of the evidence was Anthem's burden of proof. *See* ECF No. 192 at 18. That was not the law in this Circuit at the time.

More fundamentally, "plainly and unmistakably" on its face connotes far more certainty than "preponderance of the evidence." It is difficult to imagine how stating that an employer must "*prove* that an overtime exemption applies, and it *must do so by showing* that the employees fit 'plainly and unmistakably within the exemption's terms and spirit,'" *id.* at 18 (emphasis added), could be understood as anything other than a burden of proof. This articulation suggests that more is needed—perhaps much more—than is required

under the preponderance-of-the-evidence standard.[5]  *See Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993) (citation omitted) (explaining that the preponderance-of-the-evidence standard "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence" (internal quotation marks omitted)); *cf. Anderson*, 477 U.S. at 252 ("If the defendant in a run-of-the-mill civil case moves for summary judgment . . . based on the lack of proof of a material fact, the judge must ask [her]self not whether [s]he thinks the evidence unmistakably favors one side or the other . . . .").  Even when deployed side-by-side, as Learing proposes, the presence of "plainly and unmistakably" still causes it to sound more like the type of heightened evidentiary standard expressly foreclosed by *E.M.D. Sales*.  *See Lederman*, 685 F.3d at 1158 ("[J]ust as some courts have mistakenly viewed 'clear and affirmative evidence' as a heightened evidentiary standard, the same is true with the phrase 'plainly and unmistakably.'").  Simply put, there is clear tension in requiring an employer to prove it is "more likely than not" that an FLSA exemption "plainly and unmistakably" applies.

The Court is persuaded by Anthem's argument that "plainly and unmistakably" was part and parcel with the principle that FLSA exemptions were to be construed narrowly

---

[5]     As Anthem notes, the Ninth Circuit appears to have tacitly acknowledged that "plainly and unmistakably" operated as a heightened evidentiary standard in a recent decision issued while *E.M.D. Sales* was pending before the Supreme Court.  *See* ECF No. 255 at 7 n.3 (citing *Silloway v. City & County of San Francisco*, 117 F.4th 1070, 1077 n.2 (9th Cir. 2024)).  In *Silloway*, the Ninth Circuit acknowledged that the decision in *E.M.D. Sales* may affect the way it analyzes FLSA exemptions but concluded that, as it related to *Silloway*, the employer could not prevail on summary judgment "under a 'plainly and unmistakably' standard, a 'clear and convincing' standard, or 'preponderance of evidence' standard."  *Silloway*, 117 F.4th at 1077 n.2.

against employers—a principle which the Supreme Court has since rejected. *See Encino Motorcars*, 584 U.S. at 89. Now that the Supreme Court has spoken in *E.M.D. Sales*, and with respect to this Court's sister courts and the Eighth Circuit, the Court is not convinced that attempting to reconcile the "plainly and unmistakably" language pertaining to statutory construction with the preponderance-of-the-evidence standard for evidentiary sufficiency is an effective or sustainable approach. Taking together *Encino Motorcars*'s instruction that FLSA exemption defenses are to be given a "fair reading" rather than "construed narrowly" against employers, 584 U.S. at 89, and *E.M.D. Sales*'s holding that "the preponderance-of-the-evidence standard applies when an employer seeks to show that an employee is exempt" from the FLSA's overtime-pay provisions, 604 U.S. at 54, this Court believes the more prudent approach is to abandon the phrase "plainly and unmistakably" altogether in these kinds of cases.

The Court is not convinced, however, that the March 2024 Order was premised on an incorrect application of the law when it was entered. Nor does the Court presume to suggest that the decisions of its sister courts and the Eighth Circuit using the "plainly and unmistakably" language were wrongly decided. Nevertheless, this Court must endeavor to ensure its rulings align with controlling law as it stands now. *See United States v. Cavanaugh*, 643 F.3d 592, 606 (8th Cir. 2011) (explaining that lower courts are bound to follow Supreme Court precedent "until such time that the Supreme Court itself overturns" that precedent). Given the lengthy history and procedural posture of this case, the fact that no judgment has been entered, and in the interest of ensuring the issues in this case are fairly adjudicated and properly resolved at trial, the Court, in its discretion, believes it is

appropriate to revisit its summary-judgment determination regarding Anthem's FLSA exemption defenses with the benefit of the clarity provided by *E.M.D. Sales*. *See Roemen*, 343 F.R.D. at 623–24; *Grozdanich*, 48 F. Supp. 2d at 888.

Having explained the basis for reconsidering the March 2024 Order, the Court turns to analyzing the summary-judgment issues raised by Anthem in its motion for reconsideration.

## II.    Summary Judgment

Summary judgment is appropriate when "no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130, 1134 (8th Cir. 2020); *see* Fed. R. Civ. P. 56(a). "A genuine issue for trial exists when 'a reasonable jury could return a verdict for the nonmoving party.'" *Huber v. Westar Foods, Inc.*, 139 F.4th 615, 620 (8th Cir. 2025) (quoting *Anderson*, 477 U.S. at 248). When deciding a motion for summary judgment, courts "must view the record in the light most favorable to the nonmoving party" and "draw all reasonable inferences in the nonmoving party's favor." *Micone v. Levering Reg'l Health Care Ctr., L.L.C.*, 132 F.4th 1074, 1078 (8th Cir. 2025) (citations omitted). Particularly relevant here, "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254. But courts may not "weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021) (citation omitted).

16

III.    **Anthem's Exemption Defenses**

Under the FLSA,[6] an employer generally is required to pay an employee overtime compensation if the employee works more than forty hours in one week.  29 U.S.C. § 207(a)(1).  Employees who are "employed in a bona fide executive, administrative, or professional capacity," however, are exempted from the FLSA's overtime-compensation requirements.  *Id.* § 213(a)(1).  To qualify for such an exemption, an employee's "primary duty"—that is, "the principal, main, major or most important duty that the employee performs"—must be "the performance of exempt work."[7]  29 C.F.R. § 541.700(a).  The employer bears the burden of proving, by a preponderance of the evidence, that such an exemption applies.  *E.M.D. Sales*, 604 U.S. at 52.

Exemptions are to be given a "fair reading," construed in a manner that favors neither the employer nor the employees.  *Encino Motorcars*, 584 U.S. at 88–89.  And because the exemption analysis is based largely on the employee's duties, whether an exemption applies is "an intensely fact bound and case specific" question.  *Cruz*, 764 F. Supp. 2d at 1062 (citation omitted); *see also Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d

---

[6]    Exemption defenses under the FLSA and MFLSA are analogous, so courts typically analyze them under the same standard.  *See Cruz*, 764 F. Supp. 2d at 1070 (citations omitted) (noting that "[t]he MFLSA's administrative exemption is analogous to the FLSA's administrative exemption" and applying same standard to both); *Dunn v. Assocs. in Psychiatry & Psych., P.A.*, No. 22-cv-615 (NEB/DLM), 2024 WL 1698033, at *7–9 (D. Minn. Mar. 27, 2024) (analyzing professional exemption defenses under the FLSA and MFLSA simultaneously).

[7]    In addition, the employee must be paid (1) on a salary basis and (2) at or above the regulatory minimum salary level.  29 C.F.R. §§ 541.600, 541.602.  Learing does not dispute that these elements are satisfied.  *See* ECF No. 128 at 40.

560, 572 (7th Cir. 2012) (explaining that determining whether an FLSA exemption applies "requires a thorough, fact-intensive analysis of the employee's employment duties and responsibilities"); *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737, 740–41 (6th Cir. 2000) (citing *Bohn v. Park City Grp., Inc.*, 94 F.3d 1457, 1461 (10th Cir. 1996)) (same). When analyzing the applicability of an FLSA exemption, as with any issue on summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1054 (8th Cir. 2015) (alteration in original) (citation omitted); *see also Avenoso*, 19 F.4th at 1024. But "whether [employees'] particular activities excluded them from the overtime benefits of the FLSA is a question of law." *Grage*, 813 F.3d at 1054 (alteration in original) (citation omitted).

Upon careful review of the summary judgment record, the March 2024 Order, and the parties' arguments on reconsideration, the Court grants reconsideration as to Anthem's learned professional exemption defense but will not disturb its holding as to Anthem's administrative exemption defense.

### A.    Learned Professional Exemption

The learned professional exemption applies when the following three-part test is met: (1) the employee's primary duty is performing "work requiring advanced knowledge"; (2) the advanced knowledge is "in a field of science or learning"; and (3) the advanced knowledge is "customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.301(a). In the March 2024 Order, the Court held that Anthem's learned professional defense failed because Anthem did not satisfy the first part

18

of the test and expressed skepticism that Anthem could satisfy the third part. *See* ECF No. 192 at 22–30.

### 1.    Work Requiring Advanced Knowledge

"The phrase 'work requiring advanced knowledge' means work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work." 29 C.F.R. § 541.301(b). Employees who are covered by the learned professional exemption generally use their advanced knowledge "to analyze, interpret or make deductions from varying facts or circumstances." *Id.*

Particularly relevant here, the learned professional exemption is not necessarily precluded simply because employees use employer-mandated guidelines and procedures to perform their work. To the contrary, "[t]he use of manuals, guidelines or other established procedures containing or relating to . . . complex matters that can be understood or interpreted only by those with advanced or specialized knowledge or skills does not preclude exemption." *Id.* § 541.704. But the use of manuals or guidelines is relevant, and the exemption does not apply to "employees who simply apply well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the correct response to an inquiry or set of circumstances." *Id*.

Ultimately, whether the work required advanced knowledge turns on whether the NMMs "rel[ied] on advanced knowledge of their specialty to exercise discretion and judgment that is characteristic of their field." *Pippins v. KPMG, LLP*, 759 F.3d 235, 243

(2d Cir. 2014).  The parties agree that the NMMs' primary duty was utilization or medical necessity review, but they offer starkly different portrayals of the NMM role.

Learing says that Anthem's utilization review process "limits discretion and independent judgment by design" because it "guards against variances and subjective application of criteria."  ECF No. 128 at 29–30.  Learing highlights the fact that NMMs could approve authorization requests only if predetermined medical necessity criteria were met and were required to escalate requests to a medical director if the criteria were not met. *Id.* at 29; *see, e.g.*, ECF No. 129-64 at 107:18–108:12 ("Q: Even if you had familiarity with a medical condition or a type of treatment, you still had to follow the criteria as they were written, correct?  A: Correct. . . .  Q: When criteria were not met, what did you do?  A: I would either request additional information from the medical provider or send the file to the medical director for review.").  Learing cites evidence showing that NMMs were required to follow Anthem's specific step-by-step processes when performing utilization reviews, which in Learing's view left little discretion to NMMs in determining whether to approve a request.  ECF No. 128 at 29; *see* ECF No. 131-14 at 2–3; *see also, e.g.*, ECF No. 129-66 at 22:5–12 ("The [NMM] role is something that I learned on the job.  It's a process that I followed.  And it's essentially taking data that you are given and comparing it to a criteria to see if – you're playing kind of a matching game, if you will."); ECF No. 129-67 at 109:23–110:6 (stating there was no "flexibility" in whether an NMM had to use the guidelines and that NMMs could not approve requests when criteria were not met).

Anthem, on the other hand, suggests that Learing focuses too narrowly on NMMs' lack of authority to deny requests and contends that NMMs exercised discretion and

judgment by "analyz[ing] medical information to determine whether relevant criteria were satisfied" and "deciding whether to approve a request, consult a medical director, or send a case to case management." ECF No. 140 at 18–19. Anthem cites deposition testimony from several Opt-In Plaintiffs in which they agreed that they had "discretion" to approve requests or to refer them to case management or to a medical director. *E.g.*, ECF No. 142-23 at 78:12–14 ("Q: And if they met the guidelines, you had the discretion to approve a request. A: Correct."); ECF No. 142-24 at 74:11–22 ("Q: So you have the discretion to look at a case and say, 'I think this needs to be sent to case management'? A: Yes. . . . Q: You have discretion to determine whether a review should be approved or pended to the medical director, correct? A: Yes."); *see* ECF No. 141 ¶¶ 40–48.

Anthem also highlights testimony from Opt-In Plaintiffs stating that their RN training was important to their ability to perform their duties as NMMs. *See, e.g.*, ECF No. 142-28 at 138:16–141:11 (stating that "nursing experience" was needed to understand medical necessity criteria and agreeing that RN licensure was "essential"); ECF No. 142-26 at 22:16–25:15 (stating that "nursing background" and "experience" helped provide context for applying medical necessity criteria); ECF No. 142-24 at 83:7–85:4 ("Q: So you would agree . . . that you do apply clinical judgment when conducting a review using the[] guidelines? A: I do apply critical judgment based on my interpretation of the criteria . . . ."). Moreover, Anthem notes that at least one set of guidelines NMMs used expressly notes the importance of relying on clinical experience and judgment to apply the guidelines: "In all cases, clinical judgment consistent with the standards of good medical practice should be used when applying the Guidelines. . . . *The Guidelines are not a*

*substitute for the experience and judgment of a physician or other health care professionals.*" ECF No. 159-1 at 28 (emphasis added).

Although the evidence presented on summary judgment, when construed under a heightened evidentiary standard, may not have been sufficient to show that the NMMs' primary duty was the performance of work requiring advanced knowledge, the record reveals genuine issues of material fact when viewed through the lens of the preponderance-of-the-evidence standard. *See E.M.D. Sales*, 604 U.S. at 52; *Anderson*, 477 U.S. at 254. For example, while Learing offers evidence that NMMs had limited, if any, discretion in applying the predetermined medical necessity guidelines for utilization review, *see* ECF No. 128 at 29–30, "[t]he use of manuals, guidelines or other established procedures containing or relating to highly technical, scientific, . . . or other similarly complex matters that can be understood or interpreted only by those with advanced or specialized knowledge . . . *does not preclude exemption*." 29 C.F.R. § 541.704 (emphasis added). On the other hand, while Anthem cites testimony from several Opt-In Plaintiffs stating that their nursing education was important to helping them perform their duties as NMMs, it is unclear from the record the extent to which the NMMs rely on their nursing background as opposed to "simply apply[ing] well-established techniques or procedures . . . within closely prescribed limits to determine the correct response to an inquiry or set of circumstances," which would preclude exemption. *Id.*

Because genuine issues of material fact preclude summary judgment as to the "work requiring advanced knowledge" part of the test, the Court proceeds with the analysis assuming, without deciding, that Anthem could satisfy that part for the purpose of

22

determining whether the purported advanced knowledge was acquired through a "prolonged course of specialized intellectual instruction."

### 2.    Prolonged Course of Specialized Intellectual Instruction

"The best prima facie evidence" that an employee meets the specialized intellectual instruction requirement is "possession of the appropriate academic degree." *Id.* § 541.301(d). But the fact that an employee has an academic degree or that an employer requires a certain degree for a particular position is not dispositive as to whether the learned professional exemption applies. *See id.* ("[T]he learned professional exemption is available to the occasional lawyer who has not gone to law school, or the occasional chemist who is not the possessor of a degree in chemistry."). Notably, RNs "generally meet the duties requirements for the learned professional exemption," but LPNs generally do not. *Id.* § 541.301(e)(2). Relevant here, the learned professional exemption is applicable to employees "who attained the advanced knowledge through a combination of work experience and intellectual instruction." 29 C.F.R. § 541.301(d). But the exemption "does not apply to occupations in which most employees have acquired their skill by experience rather than by specialized intellectual instruction." *Id.*

Learing contends that the learned professional exemption does not apply because Anthem has "historically hired LPNs and LVNs to perform utilization review work." ECF No. 128 at 21. Learing argues that NCQA standards "establish[] that RN-level knowledge is not required for utilization review work," which supports the conclusion that Anthem cannot establish that the learned professional exemption applies. *Id.* at 35; *see* 29 C.F.R. § 541.301(e)(2). Learing further asserts that utilization review is not taught in nursing

school and that she mostly learned how to perform utilization review through work experience. ECF No. 129-62 at 248:25–249:21.

Anthem points out that the evidence upon which Learing relies relates to "practices [that] occurred more than a decade ago." ECF No. 157 at 10. Anthem notes that none of the Opt-In Plaintiffs testified that they worked with any LPN or LVN utilization reviewers at Anthem, *see* ECF No. 141 ¶¶ 49–54, which could undermine Learing's assertion that NMMs with RN licenses performed exactly the same work as utilization reviewers who are LPNs and LVNs. And as noted above, Anthem cites testimony from several Opt-In Plaintiffs who stated that their nursing education and background was important, if not "essential," to their ability to perform their work as NMMs. *See, e.g.*, ECF No. 142-28 at 138:16–141:11 (stating that "nursing experience" was needed to understand medical necessity criteria and agreeing that RN licensure was "essential").

As with "advanced knowledge," genuine issues of material fact render entry of summary judgment inappropriate as to the "specialized intellectual instruction" part of the test. For example, while Anthem cites evidence that LPNs and LVNs in utilization review roles had more limited responsibilities than RNs in the contested NMM roles, *see* ECF No. 140 at 23–24, a reasonable jury could find that because NCQA standards do not expressly require RN-level licensure for utilization reviewers, *see* ECF No. 131-9 at 19–20, the skills utilized by NMMs were not "acquired by a prolonged course of specialized intellectual instruction," 29 C.F.R. § 541.301(a)(3). But while Learing asserts that utilization review skills are not taught in nursing schools, ECF No. 129-62 at 248:25–249:21, the regulations provide that the learned professional exemption is available to

employees "who attained the advanced knowledge through a combination of work experience and intellectual instruction," 29 C.F.R. § 541.301(d).

At bottom, as the regulations require—and as the parties assert, *see* ECF No. 128 at 35–37; ECF No. 140 at 16–17—the inquiry extends beyond the titles or degrees the NMMs held or the environments in which they performed their work and must account for the actual work the NMMs performed. But viewing the evidence in the light most favorable to either party on their cross-motions for summary judgment, *see Micone*, 132 F.4th at 1078, the Court believes that "a reasonable jury could return a verdict" for both parties on this record, *see Huber*, 139 F.4th at 620 (citation omitted). Resolving the underlying factual disputes at this stage would require the Court to "weigh the evidence, make credibility determinations, or attempt to discern the truth of [] factual issue[s]," which the Court may not do. *Avenoso*, 19 F.4th at 1024.

For these reasons, and pursuant to Federal Rule of Civil Procedure 54(b), the Court revises the March 2024 Order and denies Learing's motion for partial summary judgment as to Anthem's learned professional exemption defense. The Court does not hold, however, that the learned professional exemption *does* apply as a matter of law and, for the same reasons, will not disturb the March 2024 Order's denial of Anthem's motion for summary judgment as to that issue. Therefore, should this matter proceed to trial, Anthem may argue

that Learing and the NMMs she represents were properly classified as exempt from the

FLSA's and MFLSA's overtime-pay provisions under the learned professional exemption.[8]

## B. Administrative Exemption

The administrative exemption applies for employees whose primary duty (1) is the

"performance of office or non-manual work directly related to the management or general

business operations of the employer or the employer's customers" and (2) includes "the

exercise of discretion and independent judgment with respect to matters of significance."[9]

29 C.F.R. § 541.200(a)(2)–(3).  In the March 2024 Order, the Court held that Anthem could

not meet its burden of showing that the administrative exemption applies primarily because

"the record does not support a finding that NMMs' primary duties are directly related to

---

[8]     In addition to the reasoning given above, the Court acknowledges that three of its sister courts presiding over parallel cases between NMMs and Anthem involving the same claims and issues have reached the same conclusion on summary judgment as to the learned professional exemption as this Court does on reconsideration.  *See* Order, *Baker v. Anthem Cos.*, No. 1:21-cv-04866-WMR (N.D. Ga. Mar. 3, 2025), ECF No. 200 at 7–18; Order, *Midkiff v. Anthem Cos.*, No. 3:22-cv-417-HEH (E.D. Va. Apr. 2, 2025), ECF No. 202 at 18–24; Order, *Canaday v. Anthem Cos.*, 1:19-cv-01084-STA-jay (W.D. Tenn. July 9, 2025), ECF No. 166 at 15–23.  Anthem raises those decisions as supplemental authorities here. *See* ECF Nos. 259-1, 259-2, 265-1.  Notably, each of those decisions was entered after the Supreme Court issued its opinion in *E.M.D. Sales*, and two of those decisions expressly acknowledged the holding in *E.M.D. Sales*.  *See Midkiff*, No. 3:22-cv-417-HEH, ECF No. 202 at 18; *Canaday*, No. 1:19-cv-01084-STA-jay, ECF No. 166 at 3.  Further, at oral argument for Anthem's motion for reconsideration, counsel for Learing acknowledged that the evidentiary records in those cases are not materially different from the record in this case.  The Court is persuaded by the analysis of its sister courts and joins them in their holdings with respect to the learned professional exemption.

[9]     As with the learned professional exemption, the employee also must receive a certain amount of compensation per week on a salary or fee basis, 29 C.F.R. §§ 541.200(a)(1), 541.600(a), and Learing does not dispute that this element is satisfied, ECF No. 128 at 40.

managing or assisting in the general business operations of Anthem or Anthem's customers." ECF No. 192 at 20.

Anthem requested reconsideration of the March 2024 Order as to both the learned professional and administrative exemption defenses. *See* ECF No. 254. However, its briefing on reconsideration as to its exemption defenses focuses almost exclusively, if not entirely, on issues relating to discretion and judgment—an overlapping element of both the learned professional and administrative exemptions.[10] At oral argument for Anthem's motion for reconsideration, counsel for Anthem stated that Anthem intends to focus on the learned professional exemption. The Court expressed that it understood Anthem to be conceding that the administrative exemption does not apply in this case, which Anthem did not refute. Accordingly, Anthem has waived its administrative exemption defense, and the Court will not revisit the March 2024 Order as to that issue. *See Riley v. Bondi*, 145 S. Ct. 2190, 2201 (2025) ("If a party neglects to raise, concedes, or waives an issue, a court generally has no obligation to consider it.").

---

[10] The learned professional exemption requires that an employee's primary duty must "include[] work requiring the consistent exercise of discretion and judgment," 29 C.F.R. § 541.301(b), while the administrative exemption requires that "an employee's primary duty must include the exercise of discretion and *independent* judgment," *id.* § 541.202(a) (emphasis added). For the reasons explained, the Court need not explore the distinction between "judgment," without qualification, and "independent judgment," as contemplated by the regulations governing the administrative exemption. Regardless, the Court notes it determined that the administrative exemption does not apply primarily because Anthem could not show that NMMs' primary duty was "performing office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." *See* ECF No. 192 at 19–20.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this matter,

**IT IS HEREBY ORDERED** that:

1.      Anthem's Motion for Reconsideration of Summary Judgment (ECF No. 254) is **GRANTED IN PART** as it pertains to Anthem's learned professional exemption defense;

2.      The March 2024 Order (ECF No. 192) is **REVISED** as follows: Learing's Motion for Partial Summary Judgment (ECF No. 126) is **DENIED IN PART** as to Anthem's learned professional exemption defense;

3.      In all other respects, Anthem's Motion for Reconsideration of Summary Judgment (ECF No. 254) is **DENIED**, and the March 2024 Order (ECF No. 192) otherwise remains in effect as entered.

Dated: August 12, 2025                    *s/Laura M. Provinzino*
                                          Laura M. Provinzino
                                          United States District Judge